PATTON *v.* CRUCE.

Opinion delivered May 7, 1904.

1. MUTUAL LIBELS—SET-OFF.—An instruction in an action of libel that "if the plaintiff and defendant voluntarily engaged in a newspaper controversy, and lavished slanderous imputations upon each other, and both were equally at fault, neither of them can claim damage from the other," is erroneous, as one libel cannot be set off against another. (Page 425.)

2. SAME—MITIGATION OF DAMAGES.—In determining the amount of damages to which the plaintiff is entitled for a libel growing out of a newspaper controversy, it is proper to take into consideration the circumstances under which the libel was published, and whether plaintiff was himself to blame for the controversy. (Page 426.)

3. LIBEL PER SE—WHAT WORDS ARE.—A publication charging that plaintiff was a secret slanderer and scandal monger, that he betrayed his friends and told lodge secrets, was libelous *per se.* (Page 426.)

Appeal from Conway Circuit Court.

WM. L. MOOSE, Judge.

Reversed.

STATEMENT BY THE COURT.

The plaintiff, John Patton, and the defendant, C. E. Cruce, live in the town of Morrilton. The defendant is the editor of a weekly newspaper, the Morrilton Democrat, published in that town. In the fall of 1899 there was published in this paper the following aphorism, towit: "A person never makes anything by

deserting his friends and lying down with his enemies." The
plaintiff, Patton, on account of some disagreement he had with
Cruce, understood this as having reference to him. And he had
published in the Headlight, a paper published in the same town,
an article which he intended as a reply to the remark of Cruce,
and in which he said that "A man never makes anything by being
a chronic kicker, ready to jump on everything in sight that does
not suit him, and has for his motto, 'What's in it for me?'"
In this article the defendant was referred to as "a lying repro-
bate," though his name was not mentioned, but plaintiff after-
wards, in a conversation with the defendant, disclaimed having
written those last words, stating that they were probably inserted
by the editor, but he made no public retraction of them. It is
not shown that the defendant made any reply to this article, but
in the following spring Patton was elected mayor of Morrilton.
Shortly afterwards, hearing that the defendant had made some
disparaging remarks about the firm of which he was a member, he
withdrew his subscription to the paper of defendant, and told
him to stop sending it. This action of Patton called forth the
following, which Cruce published in his paper, towit: "Now is
the cup of our sorrow full, and our tears copious. The mayor of
Morrilton has discontinued his subscription to the Democrat. It
is tough, and we acknowledge it. If we do not survive the shock
we will go into bankruptcy. Meanwhile, you might read up on
the laws, as you might be appointed receiver to inherit the ill will
a lot of soreheads of this city have for the Democrat." This is
made the basis of the first count in the complaint, it being alleged
that thereby defendant intended to charge that plaintiff was "a
sorehead, a chronic grumbler, and disgruntled in politics," and
that the intent and effect of the charge was to bring plaintiff
into ridicule, to his damage in the sum of $1,000.

The second count charges that on the 10th of August, 1900,
the defendant published of and about the plaintiff the following
language:

"John Patton, who is mayor, announces in last week's Head-
light that he will in the near future launch a first-class weekly
newspaper in this city, to fill 'the long felt want,' and that it will
have a larger circulation than the 'Weekly Bunghole Sucker.'
*   *   * He does not state whether or not he will backbite his

friends and lay down with his enemies, or even whether he will tell secrets out of the lodge. There are many things he left off his prospectus that the public is intensely interested in, but then he is a rather peculiar individual, who can change friends and issues upon very short order." It was alleged that defendant intended by this language to falsely accuse plaintiff of being a secret slanderer and scandal monger, with betraying lodge secrets, and of betraying his friends, to the further damage of plaintiff in the sum of $1,000.

On the 31st of August, 1900, the plaintiff published in the Headlight the following article: "The mayor, who is John Patton, is in constant dread that some 'big' man will visit our city and not give him an opportunity to grow a beard and have a genuine dignified appearance. No doubt, he is aware that nature was only lavish to him in one respect. She endowed him with brains, for at least enough to fill any position that he has held up to date with satisfaction to those who are his friends. However, we feel that, should the necessity arise, there is one individual in Morrilton who could be appointed a committee of one to entertain our long-looked-for visitors, and when the rotund and Falstaff-like form, accompanied by his dignified and classic appearance, is taken into consideration, the small matter of brains will be overlooked." The individual referred to as having "the rotund and Falstaff-like form" was the defendant Cruce, who, on the 7th of September following, replied as follows:

"September, 1900.—The Headlight has made a wonderful discovery. It has discovered that John Patton, who is mayor, has brains. Now, let the public watch developments." This publication by Cruce is made the basis of the third count in the complaint.

There are other counts in the complaint, and the total amount of damages claimed was $10,000, but some of these counts are lengthy, and it is not necessary to set out the complaint in full.

The answer of the defendant alleged that the publications were made from time to time by him in response to publications by the plaintiff in which the defendant was assailed and his good name and character attacked, and that the publications of defendant were made in legitimate defense of his own name and character, and were without malice, and were therefore privileged.

On the trial there was a verdict for the defendant, and the plaintiff appealed.

*J. F. Sellers,* for appellant.

The publications are libelous *per se.* 13 Am. & Eng. Enc. Law, 394; Townshend, Slander & Lib. (3d Ed.) § 172. Mutual controversy, even where the plaintiff was the aggressor, is no defense. Town. S. & L. § 414; 10 Johns. 443; 4 Wend. 336; 7 Wend. 561; 12 Wend. 12; 13 Pick. 503; 46 L. R. A. 400; 33 Ind. 176; 130 Mass. 151; 56 S. W. 134; Newell, Slander & Lib. 519; Odgers, Slander & Lib. 519; 8 Gratt. 27; 11 Mich. 20; 38 Minn. 528; 33 Mich. 348; 79 Ill. 58; 30 Fed. 229; 4 Ia. 453; 4 G. & J. 342; 56 Barb. 105; 15 Gray, 485; 83 N. W. 116; 24 Ala. 235; 1 Miles, 146.

*A. F. Vandeventer, F. N. Bruce,* and *Chas. C. Reid,* for appellee.

It was not error to refuse to instruct a verdict for plaintiff. 18 Am. & Eng. Enc. Law, 999, 1029; 1 S. E. 803; 83 Fed. 803. The question of malice was one for the jury, and their finding will not be disturbed unless clearly erroneous. 55 Ark. 494; 24 How. 544; 22 Fed. 722; 105 Cal. 284; 67 Conn. 504; 162 Mass. 131; 132 N. Y. 181; 7 Am. Dec. 735; 86 Tenn. 146; 176 Mass. 270. Where there is a conflict in the evidence the verdict will not be disturbed. 51 Ark. 467; 48 Ark. 495; 46 Ark. 430; 57 Ark. 577; 51 Ark. 524; 25 Ark. 474; 23 Ark. 131. The defense of mutual controversy as a qualified privilege was good. 28 L. R. A. 721; 36 La. Ann. 320, 38; 13 Pick. 503; 14 Cox (c. c.), 321; L. R. 2 Ir. 321; 4 P. C. 504; 83 Va. 117; 2 Gray, 282; 73 Md. 93; 13 Allen, 239; 120 Mass. 77; 1 S. E. 811; Odgers, Slander & Lib. 228; 17 N. Y. 190; 51 Vt. 501; 81 N. Y. 116; 21 So. 594; 13 Pick. 503. Criticism upon the acts of a person which are of a public concern is privileged. 13 L. R. A. 97; 46 L. R. A. 497; 34 La. 336; 21 So. 592; 46 L. R. A. 397; 42 N. W. 820; 9 La. Ann. 358. Instructions numbered 1, 2, and 3, given at request of defendant, correctly stated the law. 28 L. R. A. 721; 21 So. 593; 46 L. R. A. 397; 1 S. E. 810; 42 N. W. 820.

RIDDICK, J. (after stating the facts). This is an action for libel, brought by John Patton against C. E. Cruce to recover damages on account of certain publications made by defendant, and which the plaintiff alleges were libelous. The defense set up by defendant against this action of the plaintiff was that the publications complained of were made in response to publications against him made by defendant, that the publications by plaintiff were made necessary by the attacks of the defendant, and went no further than was required in order to make a full and fair reply to those publications.

The presiding judge, in his charge to the jury, gave a very satisfactory and clear statement of the law of the case to the jury, with the exception of one instruction, which he gave at request of defendant. That instruction was as follows: "If the plaintiff and defendant voluntarily engaged in a newspaper controversy, and lavished slanderous imputations upon each other, and both were equally at fault, neither of them can claim damage from the other, and your verdict should be for the defendant." The evidence shows that these parties did engage in a newspaper controversy, and, taking all the evidence in reference to that controversy that we have before us, we do not see that the defendant was more culpable than plaintiff himself. If the law was as stated in the above instruction, it would therefore be our duty, as well as our pleasure, to affirm the judgment; for, if one libel could be set off against another, we do not think that plaintiff would be entitled to anything in this action. But one libel cannot be set off against another independent libel. Yet, under the instruction quoted, the jury may have found that each of these parties were guilty of separate and independent libels against each other, and that, being equally to blame, neither could maintain an action therefor against the other. We are therefore of the opinion that this instruction was incorrect and misleading. *Brewer* v. *Chase,* 121 Mich. 526, s. c. 46 L. R. A. 397.

If one's good name and character is assailed in a newspaper, he may, of course, reply, and defend himself, and if his reply is made in good faith, without malice, and is not unnecesarily defamatory of his assailant, the reply will be privileged. 18 Am. & Eng. Enc. Law, 1033.

And even if, in the heat of passion, he should go beyond what a full and fair reply required, and published a separate and independent libel against his opponent, the jury, in estimating the damages, may take into consideration the previous libel committed against him and the provocation under which he labored, and, if they find that plaintiff himself was greatly to blame, they may if they deem proper, allow him only nominal damages. In other words, in determining the amount of damages to which the plaintiff is entitled for a libel, it is proper to take into consideration the circumstances under which the libel was committed, and whether plaintiff was himself to blame for the controversy. *Kelly* v. *Sherlock,* L. R. 1 Queen's Bench Cases, 686.

The plaintiff had, as before stated, six counts in his complaint, and he asked the court to instruct the jury that each of the counts except the sixth "describes and sets up a libel, and is libelous *per se,* and that the verdict should be for the plaintiff." Now, the words set out in some of the counts, we think, were libelous *per se.* For instance, the second count alleges that by the language therein set out the defendant intended and did accuse plaintiff of being a secret slanderer and scandal monger, with betraying his friends, and telling lodge secrets. This, if proved, was clearly libelous *per se.* But the instruction requested stated that each of the counts except the sixth sets up language that was libelous *per se,* and in this form we think was properly refused, for, while this may be true of some of the counts, it is not, we think, true of all.

Again, most of these publications of which plaintiff complains seem to have been directly called forth by publications on his part in which he attempted to ridicule and make sport of the defendant. Some of these replies made by defendant were, it seems to us, very mild retorts when the provocation under which they were made is considered. Plaintiff must have known that his shots at the defendant would provoke a return fire. In fact, he stated on the stand that some of these articles were written for that purpose. "I meant," he said, "for Cruce to come back at me." This being so, we do not see that he has much right to complain because Cruce did come back at him. Honors in that respect were so nearly even between them that we see very little reason why either should recover damages from the other.

While, therefore, we feel considerable doubt as to whether the plaintiff is entitled, under the proof, to any substantial damages, yet for the error referred to the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.