JENKINS v. TAYLOR.   (No. 7166.)

Court of Civil Appeals of Texas.   Austin.
Feb. 23, 1928.

Rehearing Denied March 14, 1928.

1. Libel and slander ⬚10(2)—False statements that member of Legislature denounced medical profession held libelous per se.

False statements that member of Legislature denounced medical profession, during debate on certain bill, in language which could not have been more vehement had it been used in discussing class known to be criminal throughout, held, libelous per se.

2. Libel and slander ⬚48(2, 3)—Conduct and character of public officials and candidates for office are open to fair criticism and comment.

Conduct and character of public officials and candidates for office have public interest and are open for discussion in press and otherwise so long as statements are fair criticism of or comment on acts and conduct.

3. Libel and slander ⬚48(2, 3)—Rule as to false statement of fact regarding private individual applies to candidates for office and public officials.

Same rule with reference to false statement of fact regarding individual in private life applies to candidates for office and public officials, and law protects their reputation with same sanctity, notwithstanding rule that their conduct and character are open to fair criticism and comment.

4. Libel and slander ⬚10(2)—Rule that statement concerning public official to be libelous per se must be such as would subject him to removal from office is inapplicable to member of Legislature (Const. art. 3, § 11).

Rule that statement concerning public official, in order to be libelous per se, must be such as would subject him to removal from office, does not apply to member of Legislature, since under Constitution removal is only affected by expulsion by two-thirds vote of

House of which he is member, and under article 3, § 11, each House is given authority to punish members for disorderly conduct.

5. States ⬚28(1)—Member of state Legislature must represent all classes and professions impartially.

Clear duty of member of Legislature is to represent all classes and professions impartially.

6. Libel and slander ⬚10(2)—Statement that member of state Legislature charged legislative committee of State Medical Association with dishonesty is libelous per se.

Statement that member of Legislature charged legislative committee of State Medical Association with dishonesty is libelous per se, since to falsely charge one with uttering slander or publishing libel is in itself libelous per se.

7. Libel and slander ⬚48(2)—Immunity of member of state Legislature from civil liability for statements does not affect libelous character of false statements regarding his remarks.

Immunity of member of state Legislature from civil liability for statements made in debate as to passage of certain bill does not affect libelous character of false statements as to what he said in such debate.

8. Libel and slander ⬚51(1)—Where jury found express malice in publication, it is immaterial on appeal whether letter was qualifiedly privileged.

Where jury in action for libel found express malice in publication, it is not material on appeal whether letter was qualifiedly privileged.

9. Libel and slander ⬚48(3)—Communication from secretary of State Medical Association to members, containing false statements as to what candidate for Legislature had said in debate on Medical Practice Act, held qualifiedly privileged.

Letter from secretary of State Medical Association, containing false statements as to what candidate for Legislature had said during debate as to Medical Practice Act (Acts 30th Leg. [1907] c. 123), held qualifiedly privileged as communication between parties having common interest, since secretary, if acting in good faith, had right to transmit to members within candidate's district copy of report as bearing on candidate's qualifications, from viewpoint of members of association, as candidate for Legislature.

10. Libel and slander ⬚50—Good faith affords immunity from liability for libel for false statements in qualifiedly privileged communication.

Good faith affords immunity from liability for libel, where communication is qualifiedly privileged, even where false statements of fact are made.

11. Libel and slander ⬚117—Candidate for Legislature held entitled to recover for injury to reputation generally and political career as well as to reputation as attorney.

In action for libel by candidate for state Legislature, plaintiff held, entitled to recover

---

for injury to his reputation generally and to his political career as well as to reputation as practicing attorney, especially where attack made on him was in connection with conduct as member of Legislature and while he was candidate for such office.

**12. Libel and slander ⬦⬦33—Damage is presumed where publication is libelous per se.**

Where publication is libelous per se, damage is presumed as matter of law and need not be proved.

**13. Libel and slander ⬦⬦124(8)—Instruction that jury could not find damages unless plaintiff was injured in business as attorney held erroneous in precluding recovery on presumption of damage from publication.**

In action by candidate for state Legislature for publication of letter libelous per se, instruction that jury could not find damages unless plaintiff was injured in business as attorney *held* erroneous as depriving jury of finding damages based on general presumption of law that damages flow from publication of per se libel.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Action by C. H. Jenkins against Holman Taylor. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

E. J. Miller and R. L. McGaugh, both of Brownwood, for appellant.

McCartney, Foster & McGee, of Brownwood, and Freeman, McReynolds & Hay, of Sherman, for appellee.

McCLENDON, C. J. Suit for damages for publishing a libel. Trial to jury; special issue verdict; judgment for defendant; plaintiff appeals.

There is no statement of facts, and the questions presented relate in the main to the charges given the jury. For purposes of the appeal the following statement from the record will suffice:

Plaintiff, Hon. C. H. Jenkins, was a member of the Texas Legislature in 1907, and took an active part in debating a bill known as the Medical Practice Act (Laws 1907, c. 123), passed at that session. The State Medical Association was interested in the bill and had a legislative committee from its membership charged with the duty of securing its passage. Judge Jenkins appears to have either opposed the bill or favored some amendment objectionable to the medical association. Judge Jenkins being a candidate for the Democratic nomination as Representative in the Legislature, defendant Holman Taylor, secretary of the State Medical Association, sent the following letter to Dr. A. L. Anderson, and other members of the medical association in Judge Jenkins' district:

"Fort Worth, Tex., June 22, 1926.

"Dr. A. L. Anderson, Brownwood, Texas—
Dear Doctor: Please pardon the mimeographed communication. There is not time for anything else.

"In view of the candidacy for Representative from your county to the state Legislature, of Judge C. H. Jenkins, the following excerpt from the report of the committee on public policy and legislation of the State Medical Association of Texas, as published in the June, 1907, number of the journal, is respectfully called to your attention:

"'Among the speakers against the bill were Representatives McGregor, of Houston, and *Jenkins* of Brownwood. Both of these gentlemen *charged the medical profession with being full of politics, and bent upon crushing all rivals out of existence. They could not have been more vehement in their denunciation had they been discussing a class known to be criminal throughout.* Mr. *Jenkins'* speech was about three hours long, and we verily believe that his *intemperate abuse of the medical profession* did the cause of the Christian Scientists' exemption amendment, for which he was laboring, more harm than good. He was frequently interrupted by questions from Judge Neblett, Dr. Dodd, Mr. Cocke, Mr. James, Judge Robertson, Mr. Cobb and others. *He quoted freely from Mrs. Eddy's Science and Health, an opposing medical journal, the Christian Science Journal and other sources, to prove the dishonesty of your committee* and the unjustness of the proposed law.'

"The debate referred to was in connection with the passage of the present medical practice act. There are other items equally distressing to the advocate of proper public health legislation, bearing upon the legislative record of Judge Jenkins.

"Fraternally yours,
"[Signed] Holman Taylor,
"Secretary."

The underscoring is our own and indicates the portions of the letter claimed to be libelous. Defendant claimed that the letter was mailed in good faith in the belief that its contents were true, and for the sole purpose of acquainting the members of the association with the record of Judge Jenkins in the Legislature regarding the Medical Practice Act, in which the association and its members were interested. Therefore it was asserted to be absolutely or qualifiedly privileged: First, as being a fair comment on the act of an official who was a candidate for public office; and, second, because made in good faith by the secretary of the association to its members, upon a subject in which the association and its members had a mutual interest.

The issues submitted to the jury and the latter's answers follow:

"1. Is it and was it true that the plaintiff, while a member of the Legislature in 1907, and in discussing and debating the Medical Practice Act then before said Legislature, charged the medical profession with being full of politics and bent upon crushing all rivals out of existence?" Answer: "No."

"2. Is it and was it true on said occasion and

in said debate the plaintiff vehemently denounced the medical profession?" Answer: "No."

"3. Was it true and is it true that on said occasion and in said debate the plaintiff in his speech intemperately abused the medical profession?" Answer: "No."

"4. Is it true and was it true that on said occasion and in said debate the plaintiff in his said speech charged the legislative committee of the State Medical Association of Texas of dishonesty, and did he ·quote from Mrs. Eddy's Science and Health and other publications to prove such charge?" Answer: "No."

"If you have answered each and all of the foregoing questions in the affirmative, you need not answer the following questions, but if you have answered all or either of them in the negative, then you will answer the following question:

"5. What amount of actual damages, if any, would reasonably compensate the plaintiff for the injury he has sustained, if any, because of the publication and mailing out of said letter?" Answer: "None."

"In considering this, you may take into consideration the injury to plaintiff's feelings, to his reputation, and the injury, if any, that he has sustained, or may sustain, in his profession or business.

"If you have answered each and all of the questions, Nos. 1 to 5, in the affirmative, you need not answer the following; but if you have answered each of or any of them in the negative you will answer the following questions:

"6. Was the defendant actuated by malice in mailing out the letter to Dr. A. L. Anderson and to other doctors in Brown and Coleman counties on June 22, 1926?" Answer: "Yes."

"If you have answered the next preceding issue in the negative, you need not answer this issue; but if you have answered the next preceding issue in the affirmative, then answer the following:

"7. What amount should the defendant be required to pay as exemplary damages, that is to say, in the way of punishment for having sent out and mailed out said letter maliciously, if in answer to special issue No. 6 you have said that he was actuated by malice in sending same out?" Answer: "One ($1.00) dollar."

In connection with ·these issues the court gave the following definition:

" 'Malice' is the intentional doing of an act without legal justification or lawful excuse, with the intent to injure another in his property or reputation. In determining this issue you may consider all facts and circumstances in evidence before you."

The following special charges were given upon request of defendant:

"1. A reasonable or fair comment·or criticism of the acts of a public official is not libelous, or actionable.

"2. The communication set out in the plaintiff's pleading.is one of qualified or limited privilege, and 'malice,' as that term is used in the court's main charge, is such malice as actually existed in the mind of the defendant at the time of the communication, if any, and which inspired or colored the said communication. Such malice exists only where one casts an imputation upon another which he does not believe to be true and where the communication is actuated by some sinister or corrupt motive or personal spite or ill will.

"3. You will not find any sum in answer to special issues Nos. 5 and 7 of the court's main charge, unless you find from the preponderance of the evidence before you that the writing in question was inspired by malice and that it tended to injure the reputation of the plaintiff as a practicing attorney and thereby to injure his said business."

Plaintiff requested that the jury be peremptorily instructed to return a verdict for whatever amount of actual damages they might find from the evidence would compensate plaintiff for the injury suffered by reason of sending the letter "as shown by the evidence"; and also requested added to special issue 5 the words "or political career, if any," so as to authorize the jury to include that element in the damage found. This special charge and request were refused. The contentions made by appellant are: First, that the publication was libelous per se; second, that being published with express malice as found by the jury, it was therefore actionable; third, that being libelous per se, he was entitled (a) to nominal damages in any event; and (b) to have the jury instructed that they might find damages without proof thereof, and not to have the damages found limited as in the court's fifth ·special issue and in the third special issue given at defendant's request.

[1] The question of leading importance is whether the publication was per se libelous. We have reached the conclusion although not without some difficulty, that this question must be answered in the affirmative. We base this conclusion upon two grounds: First, we believe that to falsely accuse a member of the Legislature with denouncing the . medical profession in language that "could not have been more vehement" had it been used in "discussing a class known to be criminal throughout" was to charge such official with such conduct as would impair his fitness for the office of legislator, and subject him to censure or reprimand before the bar of the House of which he was a member; and, second, the statement that he quoted from health publications and journals "to prove the dishonesty of your committee" amounted to a statement that Judge Jenkins charged the members of the legislative committee of the State Medical Association with dishonesty in connection with the passage of the bill, and in effect was a charge that he was guilty of uttering a slander.

[2, 3] The conduct and character of public officials ·and candidates for office have a public interest and ʹare .open for discussion in the press and otherwise. So long as statements can be properly characterized as fair criticism of or comment upon their acts and conduct, there can be no action for defamation of character. This rule, however, has never

been extended to statements of fact regarding acts and utterances of officers or candidates. The same rule with reference to a false statement of fact regarding an individual in private life applies to candidates and officers; and the law protects their reputation with the same sanctity. Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819; Democrat Pub. Co. v. Jones, 83 Tex. 302, 18 S. W. 652; Belo v. Looney, 112 Tex. 160, 246 S. W. 777; Galveston Tribune v. Johnson (Tex. Civ. App.) 141 S. W. 302 (writ of error denied); Ferguson v. Houston Press (Tex. Civ. App.) 1 S.W.(2d) 387; Times Pub. Co. v. Ray (Tex. Civ. App.) 1 S.W.(2d) 471.

[4] Appellee contends for the rule recognized in this state that a statement concerning a public official, in order to be libelous per se, must be of such a character as, if true, would subject him to removal from office. Cotulla v. Kerr, supra. We do not think this rule applies to a member of. the Legislature to the extent that he must be charged with an offense of sufficient gravity to warrant his removal from office. Under our Constitution such removal is only effected by expulsion by a two-thirds vote of the House of which he is a member. In addition, each House is given the express authority to "punish members for disorderly conduct." Constitution, art. 3, § 11. This power of a legislative body to punish its own members for unseemly conduct seems inherent in our system of constitutional government, so as not to require an express grant of authority. The most frequent instances in which the utterances of a legislator have been made the subject of discipline are those in which some reflection has been cast upon members or officers of the legislative body. Adjudicated cases upon the subject are rare. Belknap v. Ball, 83 Mich. 583, 47 N. W. 674, 11 L. R. A. 72, 21 Am. St. Rep. 622, and Tawney v. Simonson, Whitcomb & Hurley Co., 109 Minn. 341, 124 N. W. 229, 27 L. R. A. (N. S.) 1037, seem very nearly in point, at least in principle.

In the Tawney Case, the following publication concerning a member of Congress who was a candidate for re-election was held to be libelous per se:

"Tawney proved a falsifier of public documents by his misquotation upon the floor of Congress of a letter from the Secretary of the Treasury and his misstatement of facts with respect to an investigation and exposure in the Bureau of Engraving and Printing."

We see a close analogy between that case and the case at bar. There the charge was that Tawney on the floor of Congress willfully misquoted certain documents. Here the charge is that for the purpose of influencing legislation Judge Jenkins while a member of the House and in the discharge of his duty as a legislator, in the consideration of a bill then before the House vehemently denounced the medical profession in language that would be used in denunciation of the criminal classes. This is not in any sense a comment or criticism deduced from quoted. language of Judge Jenkins, but is a statement of fact that he used language of that character in debate before the House. We think the House of Representatives would have been justified, if that statement were true, in administering some character of discipline, to the offending party.

[5] The natural effect of utterances of this sort by a member of the Legislature while on the floor of the House would, we believe, be to impair his usefulness as a member of the legislative body and injure his reputation as a candidate for a legislative office. The clear duty of such officer is to represent all classes and professions impartially. A wholesale denunciation of the medical profession in general cannot be reconciled with a proper discharge of that duty, nor defended upon any valid ground. This view, we think, clearly appears from the report of the legislative committee itself. If the statements therein contained were true, Judge Jenkins had justly merited the contempt and hatred of the entire membership of the medical profession in Texas; and it is clear that the resolution was intended to convey that idea. In fact, the resolution shows that in the opinion of the committee the asserted intemperate abuse of the medical profession by Judge Jenkins was of such a character as to do more harm than good to the Christian Science exemption amendment to the Medical Practice Act which Judge Jenkins was charged with sponsoring, thus implying clearly the revulsion of feeling created in the minds of other members of the Legislature by the language charged to have been used. On principle, we think it ought to be held that this statement, if false, as the jury found it to be, was libelous per se.

In the Belknap Case a member of Congress, who was a candidate for re-election, was charged with having written in an illiterate manner:

"I don't propose to go into debate on the tariff differences on wool, quinine and all the things, because I ain't built that way."

The publication was a purported facsimile of a written statement made by the candidate, in which many words were misspelled. In holding that this publication was libelous, the Supreme Court of Michigan say:

"I am not prepared to yield assent to the statement that all honest members of either political party would vote for a confessed ignoramus to represent them in Congress. The statement bears its own refutation on its face, for it is apparent that these publications are made for the express purpose of preventing presumably honest members. of the candidate's own political party, as well as others, from voting for him. Counsel omit in their statement one very important element, viz., intelli-

gence. They would hardly be willing to assert that all honest, intelligent men would vote for a candidate of their party for an important office who has confessed such ignorance as to show unfitness, although ignorance be no legal disqualification. If defendant's contention be correct, then one may publish of a candidate that he cannot read or write, or that he has confessed that he cannot. No one would seriously contend that such a publication would not be injurious and libelous, and that it would not deprive the candidate of many votes. To hold otherwise would be an insult to the intelligence of our people. Yet no moral turpitude or crime or legal disqualification is charged, and therefore no libel is uttered. But why stop there if disqualification is to be made the test? Conviction of crime is not by the Constitution of the United States made a disqualification for the office of member of Congress. The only constitutional requirements are that the member shall be twenty-five years old, seven years a citizen and an inhabitant of the state where he is chosen. Aside from these the House of Representatives is the judge of the qualifications of its members. There are many crimes for the conviction of which that body would not consider a member elect disqualified; yet to publish of him, when a candidate, that he is guilty of such crime is admitted to be libelous if not true. Public journals are in the performance of a high duty when they truthfully place such charge before the public. To illustrate, that one has been a gambler does not disqualify him for the office. He may have reformed and become an exemplary citizen; but the fact that he has been a gambler is proper to be placed before the people. The electors are the ones to determine whether they wish such a man to represent them in Congress. Their verdict in his favor would undoubtedly be held conclusive of his right to the office. Disqualification to hold the office cannot therefore be made the test to determine the libelous character of the publication."

In Sillars v. Collier, 151 Mass. 50, 23 N. E. 723, 6 L. R. A. 680, it was held to be libelous per se to falsely impute to a candidate for the Legislature "some incapacity or lack of due qualification to fill the position, or some positive past misconduct which will injuriously affect him in it, or the holding of principles which are hostile to the maintenance of government."

[6] We also think the statement in the letter that Judge Jenkins charged the legislative committee of the medical association with dishonesty is libelous per se. It has been repeatedly held that to falsely charge one with uttering a slander or publishing a libel is in itself libelous per se. Sheibley v. Huse, 75 Neb. 811, 106 N. W. 1028, 13 Ann. Cas. 376; Allen v. Wortham, 89 Ky. 485, 13 S. W. 73; Patton v. Cruce, 72 Ark. 421, 81 S. W. 380, 65 L. R. A. 937, 105 Am. St. Rep. 46; Clark v. Binney, 2 Pick. (Mass.) 113; Snowdon v. Lindo, Fed. Cas. No. 13,152, 1 Cranch, C. C. 569; 36 C. J. 1172.

[7] Nor would his immunity from civil liability in any way affect the libelous character of the charge made against Judge Jenkins.

The principle here is analogous to charging one with having committed a crime already barred by limitation, and therefore no longer subjecting its perpetrator to prosecution. The uniform holding seems to be that the making of such charge after as before the bar is libelous. The principle involved is that the injury is the damage to the reputation and not the liability of putting in motion the criminal processes of the courts; in other words, the natural effect of the charge made as subjecting one to contempt, hatred, and ridicule. This effect is not governed by the liability to or immunity from criminal prosecution. It is the estimate in the minds of men of the thing done as affecting the character and reputation of the doer which incites the feelings of contempt, hatred, and ridicule, and not the liability of the doer to criminal prosecution or punishment. And so here to falsely charge one with having uttered a slander or published a libel is libelous regardless of whether the imputed slander or libel was upon a privileged occasion. The moral obliquity which produces contempt, hatred, and ridicule is not lessened by the fact that the slander was uttered or the libel published under circumstances rendering the perpetrator immune from civil action. Rather such immunity would magnify than minimize the offense. To take advantage of a privileged occasion to utter a slander or publish a libel is more reprehensible than similar conduct under circumstances where full responsibility to the law may be exacted. See 36 C. J. p. 1196, § 106.

[8, 9] It is not material to this appeal whether the letter was qualifiedly privileged, since the jury found express malice in its publication. However, in view of another trial the question may be important. We believe the court correctly charged the jury that the publication was so privileged. This circumstances under which it was sent bring it clearly within the general rule that oral and written communications between parties who have a common interest are qualifiedly privileged. The medical association was interested in legislation affecting the practice of medicine and the public health. Defendant was its secretary and those to whom the letter was sent were its members. The quotation in the letter was taken from a report made by the legislative committee of the association and was embodied in the official minutes of the association. We think defendant had the right, if he acted in good faith, to transmit to the association's members within Judge Jenkins' district a copy of this report as bearing upon Judge Jenkins' qualifications from the viewpoint of the members of the association as a candidate for the Legislature. Newell, Slander & Libel (4th Ed.) p. 460 et seq.

[10] There is this distinction between this character of privilege, and that which attaches generally to statements concerning

candidates and public officers. In the latter, as above held, false statements of fact as distinguished from fair comment and criticism are not protected. Whereas in the former good faith affords immunity even where false statements of fact are made. Missouri Pac. Ry. Co. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794; Cranfill v. Hayden, 97 Tex. 544, 80 S. W. 609; Simmons v. Dickson (Tex. Com. App.) 213 S. W. 612.

The publication being qualifiedly privileged, plaintiff was not entitled to a peremptory instruction unless the evidence conclusively showed express malice. As we have no statement of facts, we must necessarily hold that the peremptory instruction was properly refused.

[11-13] We sustain the objection made to defendant's special charge No. 3 as limiting the recoverable damages to injury "supported by evidence" to plaintiff's reputation as a practicing attorney. The special issue in question conflicts with that portion of the charge of the court which authorizes the jury to take into consideration the injury to plaintiff's feelings and reputation generally. The jury should not have been limited to the injury to plaintiff's business; he was entitled to injury to his reputation generally, and also to his political career, especially the latter, since the attack made upon him was in connection with his conduct as an officer and while he was a candidate for the same office. The petition does not allege any special damage, and it was not necessary that any should be proved. The publication being libelous per se damage is presumed as a matter of law. The jury sould have been so instructed and should not have been limited in the manner complained of.

Special issue No. 3 expressly instructed the jury that they could not find damages either actual or exemplary unless from the preponderance of the evidence they found that plaintiff had been injured in his business as attorney. Clearly this charge deprived the jury of finding damages based upon the general presumption of law that damages flow from the publication of a per se libel.

The trial court's judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.