LAWRENCE WESTBROOK V. HOUSTON CHRONICLE PUBLISHING COMPANY.

No. 6825. Decided March 3, 1937.
(102 S. W., 2d Series, 197.)

*J. D. Williamson,* of Waco, for appellant.

The comments as published were libelous per se. Jenkins v. Taylor, 4 S. W. (2d) 660; George Knapp & Co. v. Campbell, 36 S. W. 765; Forke v. Homann, 39 S. W. 210; 36 C. J. 1188, Sec. 87.

*Witt, Terrell & Witt,* of Waco, *Blanchard & Woodul,* of Houston, for appellee.

When the statement contained in the article complained of taken as a whole conclusively shows that same was published as a news item in connection with the proceedings of the Texas Legislature and not intended in any way as a reflection upon the appellant individually or officially and did not expose him

to ridicule, no cause of action could be or was established by reason of said publication. Taber v. Aransas Harbor Ter. Ry. Co., 219 S. W. 860; Cotulla v. Kerr, 74 Texas 89, 11 S. W. 1058; 17 R. C. L. 301, Secs. 40, 41; Newell on Slander and Libel, 3d Ed., 362, Sec. 341.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This case is submitted upon the following certificate from the Court of Civil Appeals, Tenth Supreme Judicial District, at Waco:

"Appellant, Lawrence Westbrook, instituted this suit against the appellee, Houston Chronicle Publishing Company, a corporation, to recover actual and exemplary damages for the publication of an alleged libelous article with reference in part to appellant's actions as a member of the House of Representatives of the Forty-second Legislature. Appellee publishes the Houston Chronicle, a newspaper with a circulation in this State of approximately 80,000 copies. The alleged libelous article was published in said newspaper. Appellant, as a member of the Legislature, on September 11, 1932, made, on the floor of the House of Representatives while in session, certain specific charges of misfeasance and malfeasance against the management of the Texas Cotton Co-operative Association and certain individuals participating in such management. An investigation of said Association had been theretofore ordered by the Legislature and a committee had been appointed to conduct the same. There was pending before the House at the date aforesaid a resolution to enlarge the powers of that committee. About that time the same or a similar resolution was pending before the Senate, and Senator Moore, a member thereof, in discussing the same, made statements which the editorial writers of said newspaper did not approve. Appellee, on September 19, 1932, published in its said newspaper the article of which appellant complains. Said article, with the several sentences specifically charged to be libelous underscored, is as follows:

" 'SENATOR, HOW COULD YOU?' "

" 'In reply to the intemperate criticism of The Chronicle by Senator Joe Moore of Greenville, The Chronicle merely wishes to reiterate its original statement that his proposal of a legislative investigation of the Texas Cotton Co-Operative Association was unjust and unsportsmanlike.

" 'It wishes to reiterate its emphatic condemnation of the tactics pursued, both in this matter and in all similar matters.

*The proclamation of serious charges on the floor of house or senate, against any person or group, represents a misuse of the immunity privileges of the legislature which should be repellent to every fair-minded man.*

" 'The charges drawn up by Representative Westbrook could not have been made public in any other place or under any other circumstances, barring court action on them, without subjecting the author to prosecution for libel. The proper place for them is a grand jury room, or the attorney general's department, to which they apparently are now to be referred.

" 'Senator Moore's lapse of judgment is further illustrated in utterly erroneous statements. "This is the thing The Houston Chronicle indorses," he is quoted as saying. Yet The Chronicle did not indorse the co-operative; it merely asked a fair deal for it.

" ' "The Chronicle is not in line with the attitude of Franklin Roosevelt." Yet Franklin Roosevelt specifically indorsed co-operative farm organizations, and placed greater emphasis on them than is now placed in the federal legislative program.

" 'As to The Chronicle being sold out to the special interests, just what interest, we pray, could have been interested to have have it defend the cotton co-operative? It so happens that Houston is the seat of the greatest private cotton trading firms in the world. They do not care for the cotton co-operative. So far as The Chronicle knows, they may have good reason for their attitude, but, in any case, if financial influence were a factor in the situation, The Chronicle might well hesitate to defend even the right of the co-operative to defend itself.

" *'The Chronicle believes, however, that the cotton dealers of Houston will believe, just as The Chronicle believes, that the cotton co-operative, whatever its virtues or faults, should be given the same protection against violent and irresponsible charges, and the same day in court, that any private concern should be given.'*

"Appellant alleged that the first of the sentences so underscored charged that he was unfair in his practices in the Legislature, that he was not fair-minded and that he had abused his privileges as a member of the House and was unfit to be a member thereof; that the second of said sentences charged that he had made on the floor of the House malicious, false and untrue statements, by which it was meant and intended to mean that he had been guilty of dishonest and dishonorable conduct; and that the third of said sentences charged that he was irrespon-

sible, dishonest and corrupt, and that his action in making such statements was corrupt and dishonorable.

"Appellee pleaded that the article upon which this suit is based was absolutely privileged under the provisions of Article 5432 of our Revised Statutes, and specially that the same constituted fair and reasonable comment upon the official acts of appellant; and that if mistaken in such contention, that the same was conditionally privileged. Appellee specifically denied that any statement of fact was made in said article, but alleged that if mistaken in such contention, such statement of fact, if any, was true, or if not true, that the same was made in good faith, with the honest belief, upon reasonable ground therefor, that the same was true.

"The case was tried to a jury. Appellant at the close of the testimony requested the court to charge the jury that said article was libelous and that the only questions for their determination were the amount of actual damages suffered by appellant and such exemplary damages, if any, as they might award. Appellant incorporated in such charge appropriate questions for the determination by the jury of such issues. The court refused to declare said article libelous as a matter of law, and submitted to the jury for determination various issues concerning the proper construction thereof with reference to whether the same was or was not libelous. All of said issues were answered adversely to appellant's contentions. The court rendered judgment for appellee. The transcript and statement of facts are here made a part of this certificate for all purposes.

"The several members of this court agree that the determination of appellant's contention that the language used in said article is unambiguous and under the undisputed facts, libelous as a matter of law, and that the same exceeds the limits of fair and reasonable comment or criticism, is necessary to the disposition of this appeal. We are not, however, in accord with reference to the merit of such contention.

"We therefore, because of the importance of the question and the differences of opinion among the members of this court, deem it proper to certify to you for determination the following:

"QUESTION: Should the trial court have held as a matter of law that the article upon which appellant's suit is based exceeded the limits of fair and reasonable comment or criticism of appellant's official acts, and that the same was libelous and actionable per se."

Libel is defined as follows:

"A libel is a defamation expressed in printing or writing, * *˙ * tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one. * * * " Art. 5430, Rev. Stat. 1925.

The following matters, among others, are privileged under Article 5432, R. S. 1925, as amended by the 40th Legislature, p. 121, Ch. 80, Sec. 2.

"The publication of the following matters by any newspaper or periodical, shall be deemed privileged, and shall not be made the basis of any action for libel without proof of actual malice:

"1. * * *

"2. A fair, true and impartial account of all executive and legislative proceedings, including all reports of and proceedings in or before legislative committees, and of any debate or statement in or before the Legislature or in or before any of its committees, * * *.

"3. * * *

"4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

Appellee insists that, under the findings of the jury, no other judgment could have been rendered than that which was rendered by the trial court, and that therefore the question submits an immaterial matter. The certificate expressly makes the transcript and statement of facts a part thereof for all purposes. By reference to the jury findings appearing in the transcript it is disclosed that 40 special issues were submitted in the court's main charge and two others on request. To these issues the jury made consistent findings against appellant. Among these findings may be noted the following:

That the article was published in good faith; that it was a fair and reasonable comment and criticism of the official public acts of appellant referred to therein; that the statements contained in the editorial were made by appellee or its employees believing in their truth; that the editorial was published at a time when the matter of the proposed investigation of the charges made by appellant was one of public concern and was published for general information; that same was published upon just and reasonable grounds for entertaining an honest belief in its truth; that the material statements contained in the editorial are substantially true, and that the appellant suffered no damage as a proximate result of its publication.

Considering these findings, it would appear that the certificate submits for decision an immaterial matter, but, in view of the recital therein that all of the members of the Court of Civil Appeals agree that the answer to the question is necessary to a disposition of the appeal, we resolve the doubt in favor of its materiality and proceed to answer same as follows:

In order to determine whether the editorial was privileged matter under the statute, it is necessary to consider the acts of appellant to which it relates. The certificate merely states that appellant, as a member of the Legislature, on the floor of the House of Representatives while in session made certain specific charges of misfeasance and malfeasance against the management of the Texas Cotton Co-operative Association and certain individuals participating in its management. The statement of facts contains an agreement by counsel as to the language employed by appellant in his charges from the floor of the House. The charges are too long to be set out here in full, but in them appellant charged the executive and operative personnel of the Association with conspiracy, misfeasance, malfeasance, deception, unfitness and conversion of funds to their personal use. He called the names of certain individuals and detailed specific acts of conduct on their part, branding certain of these acts as misfeasance and malfeasance and "probably embezzlement as well"; another act as probably coming under the head of obtaining money under false pretenses, and still another as probably constituting swindling. It is clear to our minds that the editorial was privileged matter under the terms of the statute above quoted in that it was "a reasonable and fair comment or criticism of the official acts" of a public official.

We therefore answer the question certified in the negative.

Opinion adopted by the Supreme Court March 3, 1937.