## SWEENEY v. CALLER–TIMES PUB. CO.
### No. 62.

District Court, S. D. Texas, Corpus Christi Division.

Aug. 21, 1941.

---

James B. Hubbard, of Corpus Christi, Tex., for plaintiff.

Mobley, Roberts & Lockett, of Corpus Christi, Tex., for defendant.

ALLRED, District Judge.

Plaintiff, a congressman and member of the bar in the State of Ohio, brought this suit on December 6, 1939, against defendant, a Texas corporation, for damages for alleged libel in a syndicated column under the title "Washington Daily Merry-Go-Round!" The case is almost identical with those brought in other states of the Union in which plaintiff, alleging no special damage, takes the position that the article is libelous per se. It reads (italicizing the part alleged to be false and defamatory[1]) as follows:

"A hot behind-the-scenes fight is raging in democratic congressional ranks over the effort of Father Coughlin to prevent the appointment of a Jewish judge in Cleveland.

"The proposed appointee is Emerich Burt Freed, U. S. district attorney in Cleveland and former law partner of Senator Bulkley, who is on the verge of being elevated to the U. S. district court.

*"This has aroused the violent opposition of Rep. Martin L. Sweeney, democrat of Cleveland, known as the chief congressional spokesman of Father Coughlin.*

*"Basis of the Sweeney-Coughlin opposition is the fact that Freed is a Jew, and one not born in the United States.* Born in Hungary in 1897, Freed was brought to the United States at the age of 13, was naturalized 10 years later.

"Justice department officials say he has made an excellent record as U. S. attorney, is able, progressive, and was second on the list of judicial candidates submitted by the executive committee of the Cleveland Bar Association. First on the list was Carl Friebolin, whom justice department officials say they would have gladly appointed despite his age of 60, had he not eliminated himself voluntarily for physical reasons.

"Two others on the bar association's list, Walter Kinder and Harry Brainard, were eliminated because of big business or reactionary connections. Last on the list was Dan B. Cull, former Common Pleas Court judge, and an excellent appointment except that he happens to be a Catholic and the last two judicial appointments in Ohio have been Catholics. So the justice department returned to the No. 2 man on the list, a Jew.

*"Irate, Congressman Sweeney is endeavoring to call a caucus of Ohio congressmen, Dec. 28, to protest against Freed's appointment."*

Defendant originally filed a motion to strike, a motion to dismiss and, having answered on the merits, now renews the motion to dismiss and asks for judgment on the pleadings.

Almost the identical complaint has been held not to be libelous per se in the following reported cases: Sweeney v. Newspaper Printing Corp., Tenn.Sup., 147 S.W.2d 406; Sweeney v. Beacon Journal Pub. Co., 66 Ohio App. 475, 35 N.E.2d 471, appeal dismissed, 138 Ohio St. 330, 34 N.E.2d 764; Sweeney v. Capital News Pub. Co., D.C. Idaho, 37 F.Supp. 355. Numerous dismissals, not yet published, from Arkansas, Dist. of Columbia, Florida, Kansas, Ohio, Pennsylvania, Tennessee and Virginia are also cited by defendant.

The leading case for plaintiff, holding the article to be libelous per se, is by a di-

---

[1] The portion alleged to be false and defamatory was by bill of particulars.

Defendant's first motion for bill of particulars called for the entire article and the designation of that portion claimed to be false and defamatory. By stipulation of the parties in writing, the Court entered an order on January 27, 1941, granting the motion, the bill of particulars to be filed within twenty days. Thereafter plaintiff's counsel complied in part by attaching to the original complaint a copy of the entire article, but overlooked the request in the motion for the designation of that portion claimed to be false and defamatory.

Thereafter defendant moved to strike the complaint and to dismiss on account of plaintiff's failure to comply with the order. After hearing and argument, *upon the earnest insistence of plaintiff's counsel*, he was permitted to file a further bill of particulars setting out the portions italicized above as false and defamatory. In the supplemental bill of particulars plaintiff says: "As to the other statements in said article, plaintiff has no knowledge or information sufficient to form a belief as to their truth or falsity."

vided court, Sweeney v. Schenectady Union Pub. Co., 2d Cir., 122 F.2d 288, decision dated July 18, 1941, in which there was a strong dissent by Judge Clark and in which a motion for rehearing is pending.[2] It is to be noted that this opinion is based upon court constructions of the libel laws of New York State[3]; and the Court seemingly regarded as most libelous the statement that Sweeney was the spokesman in Congress of Father Coughlin, of which plaintiff does not here complain or allege to be false.[4]

While decisions from other states are helpful; (and the decisions of the Supreme Court of Tennessee, Court of Appeals of Ohio and the Idaho District Court seem to me to be the better reasoned), the case here must be controlled by Texas law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

"Libel" is defined in Art. 5430, Vernon's Civil Statutes of the State of Texas,[5] and no other definition can be considered in determining whether the publication is libelous. Times Pub. Co. v. Ray, Tex.Civ. App., 1 S.W.2d 471; Deen v. Snyder, Tex. Civ.App., 57 S.W.2d 338; 27 Tex.Jur. § 2, pp. 586–588. To hold the publication libelous in itself, under the statute, would be going further than any Texas court has yet ventured.

The principal Texas case relied upon by plaintiff is Jenkins v. Taylor, Tex.Civ.App., 4 S.W.2d 656, 658, in which the Court reaches the conclusion, "although not without some difficulty," that it was libelous per se to falsely accuse a member of the Legislature with denouncing the medical profession in language that "could not have been more vehement" had it been used in "discussing a class known to be criminal throughout," because it was in effect charging "such official with such conduct as would impair his fitness for the office of legislator, and subject him to censure or reprimand before the bar of the House of which he was a member." The Court also held that a statement that plaintiff misquoted "from health publications and journals 'to prove the dishonesty of your committee'" was libelous per se because it amounted to a statement that plaintiff "charged the members of the legislative committee of the State Medical Association with dishonesty * * * and in effect was a charge that he was guilty of uttering a slander." The Court expressly recognized the general rule in Texas that a statement concerning a public official, in order to be libelous per se, must be of such a character as, if true, would subject him to removal from office, Cotulla v. Kerr, 74 Tex. 89, 11 S.W. 1058, 15 Am.St.Rep. 819, but holds that this rule does not apply to a member of the Legislature, since, under the Texas Constitution, art. 3, § 11, the House of Representatives is authorized to "punish members for disorderly conduct."

While "the same rule with reference to a false statement of fact regarding an individual in private life applies to candidates and officers, and the law protects their reputation with the same sanctity," (Jenkins v. Taylor, supra), plaintiff does not contend that the article libels him in his private ca-

---

[2] Rehearing denied Aug. 15, 1941.

[3] Making libelous per se the publication of "words which tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society." These court-made definitions of libel are much more sweeping than the exclusive definition contained in the Texas statute. Art. 5430, Vernon's Civil Statutes of Texas.

[4] In this case plaintiff does not allege in his bill of particulars the falsity of the statement that he was "known as the chief congressional spokesman of Father Coughlin"; nor does he allege the falsity of the statement that the "basis of the * * * Coughlin opposition is the fact that Freed is a Jew and one not born in the United States"; nor does he allege the falsity of the statement that the basis of his own opposition was that Freed was "not born in the United States." He avoids this last by alleging the falsity of the statement "basis of the *Sweeney* * * * opposition is the fact that Freed is a Jew," leaving out an allegation of the falsity of the statement "and one not born in the United States."

[5] "Article 5430. Definitions. A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury. Acts 1901, p. 30."

167

pacity; on the contrary, he says it affects him as a public officer and as an attorney, tending "to convey that plaintiff was and is guilty of un-American, racial prejudices against persons of Jewish origin and guilty of conduct unbecoming a public officer." As pointed out in Sweeney v. Beacon Journal Pub. Co., supra, 66 Ohio App. 475, 35 N.E.2d 473, the "publication does not speak of the congressman as a lawyer nor does it infer that his activities were pursued in that capacity. It deals entirely with the activities of a public officer in his connection with a matter entirely *political* in character." (Italics supplied).

"As a general rule a publication concerning a public officer, in order to be libelous per se, must be of such a character as, if true, would subject him to removal from office." 27 Tex.Jur. § 12, p. 606; Cotulla v. Kerr, supra; Nunn v. Webster, Tex.Com.App., 260 S.W. 157.

Plaintiff does not contend that the facts stated in the publication would afford grounds for removal; but, pointing to his oath as congressman to support, defend and bear true faith and allegiance to the Constitution, which prohibits, among other things, any religious test as a qualification for Federal office, says, in his brief: "It certainly is a charge of want of integrity and misconduct in office." This conclusion seems to be rather overdrawn. As pointed out in the reported cases, plaintiff has no duty in connection with the appointment of a United States District Judge. The President appoints, with the advice and consent of the Senate. A congressman has no right or duty, in law, to even recommend. His is no more than the privilege of the average citizen to recommend or oppose the appointment if he so desires. As a political custom, a courtesy to the congressman, his recommendation may sometimes be of considerable weight. But, having no duty, in law or in fact, a statement that he opposed an appointment because of the race, religion, or place of birth of an applicant is not libelous. The average reader could as easily deduce that the congressman thought perhaps the President might appoint too many of a particular race, or too many not native born, or that a representative of another class group should be appointed due to the preponderance of that group in the community; or that the congressman just wanted some other man appointed and was urging the fact of race and foreign birth in the hope that the appointment might be given to his choice.

The test is: "What effect would the publication have upon the mind of an ordinary reader? What construction would he have put upon it?" A. H. Belo & Co. v. Smith, 91 Tex. 221, 42 S.W. 850, 851. It would be a rather violent presumption to say that the effect of the publication upon the mind of the "ordinary reader" would be that plaintiff is not a man of integrity or was guilty of any misconduct in office. As stated by the majority opinion in the New York case (Sweeney v. Schenectady Union Pub. Co., supra), "certainly the time and place of publication must be given due weight and effect." It seems to me this Court should not close its eyes to the fact that the "ordinary reader" of defendant Corpus Christi, Texas, Caller-Times probably never heard of Congressman Sweeney before the publication, didn't remember his name five minutes afterward and did not care whether he opposed the appointment of Freed, or on what grounds. Certainly the publication could hardly have conveyed the impression that he was anti-Semitic or un-American. As a general rule, "ordinary readers" in these parts are fortunately tolerant and skeptical, especially as to political matters. They subscribe to the general principle, recognized by statute [6] and decisions, that newspapers are free to publish and comment concerning a public officer so long as they do not falsely charge him with such conduct as would subject him to removal from office.

The same general rule applies to candidates as to public officers. It is never libel to charge that one is opposed to, or in favor of, legislation on which the citizenship of the state may take opposite views, Brown v. Houston Printing Co., Tex.Civ.

[6] Art. 5432, Vernon's Civil Statutes, making privileged reports and comments on legislative proceedings, acts of public officials and other matters of public concern published for general information.

[7] In this case the article alleged that plaintiff was a candidate on the Ferguson (impeached Governor of Texas) ticket; that he was a "Ferguson man" and that this meant that he was opposed to the Hobby "win the war" legislation, etc. Plaintiff denied that he was a "Ferguson man" or a candidate on that ticket; and alleged, by innuendo, that the publication as a whole meant that he was not a loyal American citizen.

App., 255 S.W. 254 [7]; or that a sheriff was absent from his office when a deputy phoned, resulting in escape of a murderer and a three-year search and further stating that there was delay in getting a warrant, Houston Pub. Co. v. Thomas, Tex.Civ.App., 262 S.W. 243.

In a letter from plaintiff's non-resident counsel, the statement is made: "As we see it, the crux of the matter which should be in the mind of every judge faced with the question is this: just how the judge would feel if it was charged that he had decided a case against a litigant because the party was a Jew."

In the first place, the publication considered as a whole, as it must be, (27 Tex.Jur. § 14) and ascertaining its meaning from the language used as commonly understood (27 Tex.Jur. § 13), is not susceptible to this construction. Further, a Judge is under an altogether different form of oath [8] from that of a congressman. Again, it is not a question of how a Judge or plaintiff might feel about it; mere injury to the feelings of a public officer cannot be the basis of an action, Ferguson v. Houston Press Co., Tex.Civ.App., 1 S.W.2d 387, affirmed, Tex.Com.App., 12 S.W.2d 125. A Judge might not "feel" very good about a newspaper report that he was "reactionary." Such a report might conceivably make him hated in some quarters and popular in others. All Judges, I assume, feel in their own minds they are liberal; but a charge against a Judge, however untrue, that he is not liberal or is reactionary would hardly be libelous. As pointed out by Judge Clark in his dissenting opinion in the New York case, the broad sweep of the rule for which plaintiff contends "would take in comments found day after day in the most conservative newspapers, either in direct statement or as quotations of responsible critics, that a public official, particularly a legislator, is pro- or anti-labor, or pro- or anti-Nazi, or pro or anti this or that race, color, or creed."

While a public officer or candidate cannot be libeled any more than any other citizen, he cannot go about with his feelings on his sleeve. Public officials and candidates are legitimate subjects for news and comment. While they cannot be *libeled,* they must reconcile themselves to occasional "yarns" which, however hurtful to their feelings, are not actionable.

Which leads to a discussion of defendant's second proposition: that under the Texas statutes and decisions the article complained of was privileged. Plaintiff says this is a matter of defense and will have to await proof. This would ordinarily be true if so much were not admitted in the pleadings.

As pointed out in footnote 4 above, plaintiff, by filing his bill of particulars, does not deny that he was known as the congressional spokesman of Father Coughlin, or that the basis of Father Coughlin's opposition to Freed was that he was a Jew, not born in the United States; nor does he deny that the basis of his own opposition was that Freed was not born in the United States. He does not dispute that a hot behind-the-scenes fight was raging in the Democratic congressional ranks over Father Coughlin's effort to prevent the appointment of Mr. Freed, then United States District Attorney, who had an excellent record, endorsed by the executive committee of the Clevland Bar Association. True, he denies that the basis of his own opposition was that Freed was a Jew. The statement in the publication as to the basis of plaintiff's opposition appears, at first blush, to be one of fact; but it may as well be a conclusion from the other facts stated.

While, in order to come under the statutory privilege, a distinction is sometimes drawn between statements of fact regarding acts or utterances of officers or candidates, and comment thereon, Jenkins v. Taylor, supra, and a newspaper cannot make untrue and libelous statements and then comment thereon, ascribing corrupt motives to an officer, Enterprise Co. v. Wheat, Tex.Civ.App., 290 S.W. 212, A. H. Belo & Co. v. Looney, 112 Tex. 160, 246 S. W. 777, yet it is not necessary that the facts be established as true (a perfect defense), before a newspaper publisher can avail himself of the qualified privilege, Nunn v. Webster, supra. Texas courts, while carefully protecting the right of a citizen to his

---

[8] Title 28, § 372. "I do solemnly swear that I will administer justice *without respect to persons,* and do equal right to the poor and to the rich; that I will faithfully and impartially discharge and perform all the duties incumbent upon me as United States District Judge according to the best of my abilities and understanding, agreeably to the Constitution and laws of the United States; So help me God." (Italics supplied).

good name, have, with equal zeal, progressively recognized the right of newspapers to make reasonable and fair comment on the acts of public officials or matters of public concern for general information, Express Pub. Co. v. Keeran, Tex.Com.App., 284 S.W. 913; Westbrook v. Houston Chronicle Pub. Co., 129 Tex. 95, 102 S.W. 2d 197.

It is not enough to say this privilege shall never be denied and then extend it only as a matter of defense. It would in effect be a denial of the freedom of the press to say that reputable newspapers would have to defend themselves from such suits as this. It would make them unduly hesitant, fearful. It would lead to endless litigation even though the "pickings" at the hands of juries be small. In my judgment enough facts are admitted to justify, as a reasonable deduction or comment, the columnist's statement as to the basis of plaintiff's opposition to Freed's appointment. It is, therefore, entitled to the qualified privilege recognized in Texas without defendant being put to the burden of proving the truth of every item or deduction. Nunn v. Webster, supra.

Defendant's motion to dismiss will be granted. Counsel may prepare and tender to the Clerk an order accordingly.