## HOLLOWAY v. THE SCRIPPS PUBLISHING CO.

*Libel — Publication of political views or arguments — Proof of special damages necessary, when — Pleading.*

Printed words of ridicule or contempt, which relate solely to political views or arguments on questions of public interest, and which do not attack the character of a person and do not impute immorality or a violation of law, but merely tend to lessen a man in public esteem or to wound his feelings, are not actionable without proof of special damages.

(Decided July 7, 1919.)

ERROR: Court of Appeals for Summit county.

*Messrs. Holloway & Chamberlain,* for plaintiff in error.

*Messrs. Allen, Waters, Young & Andress,* for defendant in error.

WASHBURN, J.  Plaintiff, Albert C. Holloway, sued the defendant, The Scripps Publishing Company, to recover damages for publishing in its newspaper certain purported news items concerning plaintiff, which, it is claimed, contained libelous matter.

There was no allegation of special damages.

Defendant filed a motion to strike out certain parts of plaintiff's petition, and that motion was granted, to which ruling plaintiff excepted. Thereafter plaintiff filed an amended petition, to which defendant filed a demurrer, which was sustained by the court, and plaintiff not desiring to plead further, judgment was entered dismissing plaintiff's petition. To this action of the court plaintiff

excepted and now prosecutes error to this court, seeking to reverse the judgment below.

It is unnecessary to discuss whether or not the court below erred in granting the motion to strike out, as we find that it was proper for the court to strike out at least a part of what was stricken out, but we shall consider the sufficiency of the petition as if the matter stricken out were still in the petition.

The publications complained of were made on the 4th, 5th and 14th days of June, 1917, when this country was associated with England in a war against Germany, but before the Espionage Act was in force. For the purposes of this inquiry the allegations of the petition are taken to be admitted to be true, but that does not admit that the articles were wholly and entirely false but only those parts of the articles which, if true, would tend to subject plaintiff to public hatred, contempt or ridicule.

On June 4th the defendant, in reporting the proceedings of a public meeting at which the plaintiff appeared and spoke, published the following:

" 'Wilson Sold People to England,' is declaration of Socialist Orator. 'President Wilson sold out his Country to the English. He double-crossed his own people.'—Attorney A. C. Holloway of Akron. 'If there is any one guilty of treason it is President Wilson.'—Attorney Alex Pattey of Cleveland. The above un-American utterances were the high spots in addresses delivered before a body of Socialists in Central Labor Union Hall, Sunday afternoon. Joseph Wein and H. E. Longacre said they would fight Holloway's admittance into the ranks of the Army and Navy Union. Both said

Holloway recently served notice that he would apply for membership. He has attended several meetings of the organization. Holloway said: 'Congress is composed of a bunch of hypocrites and liars. They have all sold out their country.'"

In its issue of June 5th defendant published the following:

"Holloway will be kicked out by U. S. W. V. Official says Socialist Attorney violated oath and must be ousted. A. C. Holloway, Atty., 439 Akron Savings & Loan Building, started something Sunday when, in an address to Jewish Socialists at Central Labor Union Hall, he made the statement that Wilson had double-crossed the people of this country and had sold out to the English. Officials of Camp Willford, Spanish-American War Veterans, said Tuesday that steps would be taken at the Wednesday night meeting to oust Attorney Holloway from the organization, as a result of his Sunday address. Joseph Wein, prominently identified with the Akron organization of Spanish War Veterans, said steps would be taken to oust Holloway out of the ranks. 'Holloway has violated the oath that he took when he was admitted to membership, and under our rules and regulations the only thing left to do is to oust him.'"

And in the issue of its paper of June 14th defendant published the following:

"Third party to enter ticket in the race for all city offices. A third party is to have a City Ticket in the race this Fall, with a complete ticket from Mayor on down the list. Circulation of petitions started Thursday. There will be no Socialist ticket

in the field, but the new Citizens' Ticket will be a combination of Socialists, Free Thinkers, and others of the Democratic and Republican parties not in sympathy with the selective service Army plan. Albert C. Holloway, William F. Pottin, will be candidates for office on the new ticket, it was reported. Holloway is said to be grooming himself for the mayoralty race."

The question is, admitting that said statements were untrue and that plaintiff can not prove that any special damages resulted from their publication, can he nevertheless maintain an action of libel?

If the statements complained of had been published by word of mouth instead of being printed in a newspaper, no action could have been maintained without special damage being alleged and proven.

Words, to be actionable, must come within one of the following classes:

1. Words importing an indictable offense.

2. Words tending to prejudice one in his office or calling.

3. Words involving moral turpitude of such a character as to tend to his exclusion from society.

The supreme court of Ohio, in *Davis, by etc.,* v. *Brown,* 27 Ohio St., 328, referring to the above propositions, declares that, "These rules have long been recognized and repeatedly affirmed in Ohio." In *Hollingsworth* v. *Shaw,* 19 Ohio St., 431, the supreme court says: "An action of slander can not be maintained for calling the plaintiff *a deserter,* without averment and proof of special damage."

It then quotes from 1 Starkie on Slander, 21, as follows:

"No charge, however foul, will be actionable, without special damage, unless it be of an offense punishable in a temporal court of criminal jurisdiction."

The charge in the last mentioned case was made during the civil war. and involved the highest degree of disgrace and infamy, and yet, because it was not an indictable offense, the right of action was denied.

In referring to these settled rules, the supreme court has declared its unwillingness to extend the class of cases in which recovery can be had for slander without proof of special damages, even going to the extent of holding that words spoken of a man imputing to him an act of sodomy were not actionable without an allegation of special damages, because sodomy was then not an indictable offense under the laws of Ohio.

It is certain that if the publications in the case at bar had been by speaking, instead of printing, the rule applied in the foregoing cases would have to be applied to the case at bar, and it would follow that to state a good cause of action the petition would have to contain an allegation of special damages.

But in many jurisdictions there is a well-recognized difference between words spoken and matter that is written and published concerning a person.

This distinction was stated in an early Ohio case, *Watson* v. *Trask,* 6 Ohio, 531, 533, as follows:

"Whatever charge will sustain a suit for slander where the words are merely spoken, will sustain a

suit for a libel, if they are written or printed and published, and many charges, which, if merely spoken of another would not sustain a suit for slander, will, if written, or printed and published, sustain a suit for libel. Words of ridicule only, or of contempt, which merely tend to lessen a man in public esteem, or to wound his feelings, will support a suit for libel, because of their being embodied in a more permanent and enduring form; of the increased deliberation and malignity of their publication, and of their tendency to provoke breaches of the public peace."

It is true that in some cases the soundness of this distinction is doubted, but its existence in Ohio is established. *State* v. *Smily*, 37 Ohio St., 30.

While this difference between slander and libel is recognized in Ohio, and is stated in the very broad, general terms quoted above, it seems to be settled by the great weight of authority, that, even if printed and published, mere words of ridicule, which tend to lessen a man in public esteem or to wound his feelings, are not always actionable without proof of special damages. Both of the cases in Ohio in which the rule has been referred to were cases where the publication charged the plaintiff with a serious violation of moral law, although not a technical violation of the criminal law, and when the authorities are carefully considered in the light of a sound public policy we think that to come within the rule permitting recovery, without proof of special damages, the printed words of ridicule or contempt must relate to matters which are required either by the moral code or the law of the land, liberally and not technically construed;

printed words of ridicule or contempt which relate solely to political views or arguments on questions of public interest, and which do not attack the character of a person, and do not impute immorality or a violation of law, come within the rule applicable to spoken words, and are not actionable without proof of special damage.

The acts and views attributed to the plaintiff in the publications complained of in the case at bar related to political matters or matters of governmental policy. To criticise the president, even in time of war, if it does not give aid and comfort to our enemies, is not immoral, and except as limited by the Espionage Act (which was not then in force) is not illegal. To question the wisdom of the acts of congress is not a crime in a democracy. It may be unwise and tend to make one politically unpopular. It seems to us quite apparent that at the time of the alleged criticism of the president and congress, such alleged criticism, if made, would not have subjected plaintiff to an action for libel or slander. If plaintiff had said that the president had sold out this country to England, that would have been a severe and intemperate comment on matters of public interest and general concern, but the public would have understood it to be merely an exaggerated expression of an opposition to a governmental policy—an ill-advised and unpopular opposition, to be sure, at that time, but not a charge that the president had been guilty of an immoral act or the violation of any law. Plaintiff had the moral and legal right to express opposition to the policy of the government, and, while such criticism of the president would probably have sub-

jected plaintiff to contempt and ridicule for his political views, it would not have subjected him to contempt and ridicule for an immoral or illegal act. Many authorities sustain the proposition that it is not libelous to charge a man with doing that which he may lawfully do and which is not a violation of the moral code. *Bennett* v. *Williamson*, 4 Sandf., 60; *People* v. *Jerome*, 1 Mich., 142; *Homer* v. *Englehardt*, 117 Mass., 539; *Goldberger* v. *Philadelphia Grocer Pub. Co.*, 42 Fed. Rep., 42; *Urban* v. *Helmick*, 115 Wash., 155, and *Foot* v. *Pitt*, 83 App. Div. (N. Y.), 76.

We are not unmindful of the fact that the situation in the country, and the state of public opinion, made the criticisms attributed to plaintiff unpopular with all right-thinking people, but the subject-matter being political, and the views attributed to plaintiff being neither immoral nor illegal, we hold that the acts charged in the publications did not expose plaintiff to hatred, contempt, ridicule or disgrace in the sense or to the degree required to make the publications actionable without proof of special damages.

We reach this conclusion not without difficulty and doubt, but it is our best judgment after a very thorough consideration of the record and the authorities.

*Judgment affirmed.*

DUNLAP, P. J., and VICKERY, J., concur.