SWEENEY, APPELLANT, *v.* THE BEACON JOURNAL PUBLISHING CO., APPELLEE.

(Decided February 27, 1941.)

*Mr. Martin A. McCormack, Mr. Maxwell J. Gruber* and *Mr. Stanley S. Nicholls,* for appellant.

*Messrs. Brouse, McDowell, May & Bierce,* for appellee.

DOYLE, P. J.   This is an appeal on questions of law from the Common Pleas Court of Summit county.

On December 23, 1938, there appeared in the Akron Beacon Journal, a daily newspaper of wide circulation in the city of Akron and the state of Ohio, the following news item, which had been syndicated from Washington, D. C.:

"Washington Merry-Go-Round
"By Drew Pearson and Robert S. Allen
"*A hot behind-the-scenes fight is raging in democratic congressional ranks over the effort of Father*

*Coughlin to prevent the appointment of a Jewish judge in Cleveland.*

"The proposed appointee is Emerich Burt Freed, U. S. district attorney in Cleveland and former law partner of Senator Bulkley, who is on the verge of being elevated to the U. S. district court.

"*This has aroused the violent opposition of Rep. Martin L. Sweeney, democrat of Cleveland, known as the chief congressional spokesman of Father Coughlin.*

"*Basis of the Sweeney-Coughlin opposition is the fact that Freed is a Jew, and one not born in the United States.* Born in Hungary in 1897, Freed was brought to the United States at the age of 13, was naturalized 10 years later.

"Justice department officials say he has made an excellent record as U. S. attorney, is able, progressive, and was second on the list of judicial candidates submitted by the executive committee of the Cleveland Bar Association. First on the list was Carl Friebolin, whom justice department officials say they would have gladly appointed despite his age of 60, had he not eliminated himself voluntarily for physical reasons.

"Two others on the bar association's list, Walter Kinder and Harry Brainard, were eliminated because of big business or reactionary connections. Last on the list was Dan B. Cull, former Common Pleas Court judge, and an excellent appointment except that he happens to be a Catholic and the last two judicial appointments in Ohio have been Catholics. So the justice department returned to the No. 2 man on the list, a Jew.

"*Irate, Congressman Sweeney is endeavoring to call a caucus of Ohio congressmen, Dec. 28, to protest against Freed's appointment.*" (Italics ours.)

Subsequent thereto, Martin L. Sweeney, the appellant herein, filed suit in the Court of Common Pleas against the Beacon Journal Publishing Company and

prayed for damages on account of libel predicated upon the newspaper article.

A demurrer, directed to the petition, was sustained by the trial court, and the petition was later dismissed, upon the representation of the petitioner that he desired to plead no further. This final order of the trial court furnishes the basis of this appeal.

The petition does not plead special damage to the appellant; therefore the article of which complaint is made must be libelous *per se* to withstand a demurrer which charges "that the * * * petition does not state facts sufficient to state a cause of action against the defendant." 25 Ohio Jurisprudence, Libel and Slander, Section 5; 33 American Jurisprudence, Libel and Slander, Section 5.

It is alleged that each of the italicized parts of the article "in so far as the plaintiff is concerned, is false, scandalous and defamatory"; that he is a duly elected member of the Congress of the United States, an attorney at law in good standing before the Ohio bar, and until the publishing of the article "was not suspected of conduct, practices or prejudice towards his constituents, clients or fellow-man because of race, creed or color, or lacking in respect for religious and racial tolerances for the tasks incident to the carrying out of his duties as a duly elected representative of the people of the state of Ohio, and as a practicing attorney * * *."

The petition further recites that the defendant published the article "contriving and intending to injure plaintiff and deprive him of the respect, confidence and esteem peculiarly essential to plaintiff's profession and office, and * * * to deprive plaintiff of his good name, reputation and the esteem of his constituents and clients, and to bring him into disastrous scandal, ridicule and professional disrepute before his constituents, clients, professional associates, friends, neighbors, acquaintances, and the public in general, and to hold

plaintiff up to public scorn, contempt, ridicule and disgrace * * *''; that the defendant in publishing and circulating the article acted ''falsely, wantonly, wrongfully and recklessly.''

Printed words may be actionable in themselves—*per se*—or they may be actionable only on allegation and proof of special damage. Words of both classes are actionable on the same grounds and for the same reasons. The difference between them is in the matter of proof of the resulting injury. In the case of words actionable *per se,* their injurious character is a fact of common notoriety. They import damage, and, therefore, in such cases, general damages need not be pleaded or proved, but are conclusively presumed to result. Words which may be of a defamatory character, but not libelous *per se,* must be proved to be defamatory and their injurious effect must be established by due allegation and proof. 25 Ohio Jurisprudence, Libel and Slander, Section 5; 33 American Jurisprudence, Libel and Slander, Section 5; *Cleveland Leader Printing Co.* v. *Nethersole,* 84 Ohio St., 118, 95 N. E., 735, Ann. Cas. 1912B, 978; *Mauk* v. *Brundage,* 68 Ohio St., 89, 67 N. E., 152, 62 L. R. A., 477.

Incorporated in cases heretofore decided by this court is a comprehensive classification of matters which are held libelous *per se.* As therein set forth, charges are libelous *per se* if they accuse one of—

1. ''An offense indictable at law, involving in its perpetration moral turpitude or visitable with an infamous punishment''; or

2. ''An offensive disease or other disgrace of a social character, importing the exclusion of its victim from reputable society''; or

3. ''In the case of a woman, lack of chastity or her lack of standing in society as a woman''; or

4. ''Conduct which would be calculated to injure the person in his calling, business, trade or profession''; or

5. "Matters which would bring him into ridicule, hatred or contempt."

*Holloway* v. *Scripps Publishing Co.*, 11 Ohio App., 226; *Foster* v. *Fesler*, 25 C. C. (N. S.), 449, 27 C. D., 125; *Peer* v. *Hoiles*, No. 337, Lorain county (unreported), decided by this court on October 10, 1925.

It is the claim of the petitioner that the printed words upon which he predicates his action fall within the last two classifications.

The article is directed solely to the activities of the congressman as a public officer and does not impute to him any conduct in his calling, business, trade or profession. The publication does not speak of the congressman as a lawyer nor does it infer that his activities were pursued in that capacity. It deals entirely with the activities of a public officer in his connection with a matter entirely political in character. The claimed libel does not come under the category of imputing to him conduct which affects him injuriously in his "calling, business, trade or profession."

Does the article reflect upon his character in such a manner as to bring him into ridicule, hatred or contempt?

In *Holloway* v. *Scripps Publishing Co., supra,* this court stated that "* * * it seems to be settled by the great weight of authority, that, even if printed, and published, mere words of ridicule, which tend to lessen a man in public esteem or to wound his feelings, are not always actionable without proof of special damages. * * * when the authorities are carefully considered in the light of a sound public policy we think that to come within the rule permitting recovery, without proof of special damages the printed words of ridicule or contempt must relate to matters which are required either by *the moral code or the law of the land,* liberally and not technically construed; printed words of ridicule or contempt which relate solely to political views or arguments on questions of public

interest, and which do not attack the character of a person, and do not impute immorality or a violation of law, come within the rule applicable to spoken words, and are not actionable without proof of special damage." (Italics ours.) We reaffirm, for the purposes of this case, this principle of law.

The language used in the article charges that the plaintiff is "known as the chief congressional spokesman of Father Coughlin," and that the basis for their opposition to the appointment is "the fact that Freed is a Jew, and one not born in the United States."

This language means that the plaintiff, known as the spokesman in Congress for a priest of the Catholic Church, in conjunction with the priest opposed the appointment of Freed (to a federal judgeship) because he is a foreign-born Jew. If the word "facts" had been used, the language could have been construed to mean that there were two grounds of opposition: *viz.*, that Freed was a Jew, and also that he was foreign-born. The singular word "fact" requires the first construction.

It does not seem to us that the opposition of a congressman to the appointment of a person to high public office by the President of the United States for the reason that he is a foreign-born Jew constitutes a violation of the moral code or the laws of the land. Nor does it seem that if a congressman acts as a spokesman for a priest in the Catholic Church he is guilty of such delinquencies.

If the plaintiff's claims can be sustained, then it can be said of the framers of the Constitution of the United States that they violated the moral code when they advocated the enactment of Article II, Section 1, of the Constitution of the United States, which provides in part that "No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President" of the United States; or of Article

I, Sections 2 and 3, of the Constitution, which in part provide that no person shall be a representative to Congress who has not been for seven years a citizen of the United States, nor a senator unless he has been a citizen for nine years.

It is common knowledge that political appointments are greatly influenced by the political effect of the appointments. And it is common practice to appoint, to various offices, persons who are representative of different nationalities, creeds and groups. To oppose a person for political reasons because he is a Methodist, a Baptist, a Catholic, a Jew, or one foreign born, for a particular appointment, does not carry the necessary implication that the person opposing is influenced by his own intolerance, any more so than does opposition to a qualified person because he is of some other political party, or is in the declining years of his life, or favors prohibition, or is of socialistic tendencies, or has had capitalistic connections. It might be said under these circumstances that the person charged with such utterances was deprived of the ''respect, confidence and esteem'' of the thousands of honest citizens who come within such classification.

We are concerned only in this appeal with a technical rule of law having to do with the matter of proof of a claimed injury resulting from a claimed defamatory publication. Our decision cannot be bottomed upon social implications which might attach to such language, nor to its governmental effect. It is not our province to approve or disapprove such argument, and our holding in this case in no wise indicates that this court approves of opposition to the appointment of a man to public office based on the religious or social heritage of the proposed appointee. We merely hold that to publish of a man that his opposition to a proposed appointee for office is based on religious grounds and the fact that the candidate is of foreign birth, is not libelous as a matter of law—*i. e., per se.*

It is therefore our opinion that in taking the entire article, keeping in mind the theme of the composition, the circumstances and the occasion, the language employed relates solely to political views and activity on a question of public interest; that the language does not attack the character of the plaintiff nor does it impute to him immorality or a violation of the law of the land.

Therefore the words printed are not libelous *per se.* The judgment is affirmed.

*Judgment affirmed.*

WASHBURN and STEVENS, JJ., concur.