**Rev. A. C. SPERN**

v.

**TIME, INC.**

Civ. A. No. 70–368.

United States District Court,
W. D. Pennsylvania.

March 17, 1971.

**1202**

Mahady & Mahady, Greensburg, Pa., for plaintiff.

Eckert, Seamans & Cherin, Pittsburgh, Pa., Cravath, Swaine & Moore, New York City, for defendant.

## OPINION AND ORDER

KNOX, District Judge.

This action is one brought by Angelo C. Spern against Time, Inc., for an alleged libel which appeared in the November 14, 1969, issue of *Life* Magazine. The article complained of examined the so called instant minister ordination and religious diploma mill rackets. The article is entitled "Praise the Lord and Pass the Diplomas". The only paragraph of the nine-page article offensive to the plaintiff reads as follows:

> "The man who takes dubious credit for giving Keck his start is Angelo C. Spern, director of the Calvary Grace Church in Rillton, Pa. 'I ordained him early in 1961', says Spern. 'He called his church Calvary Grace *Christian* Church and listed himself as pastor and me as International General Superintendent, which I was. But, about a year later, I got his stationery and he calls himself International

General Superintendent and lists me as National Superintendent.' Spern still fumes at his power play, saying, 'Why they didn't even hold a meeting.' "[1]

Extensive investigation by author William A. Bruns, who conferred with *Life* editors Berry Stainback and Stephen M. Gellman, disclosed that the said Herman Keck, Jr., would ordain anyone as a minister for a fee. It is on Keck that the article focused. The substance of plaintiff Spern's complaint is that since the appearance of Mr. Brun's article, which in its facts and its implication and in its editorial comment is allegedly untrue, the Reverend Spern has been chided, ridiculed and made the subject of scorn.[2]

■ This matter is presently before the Court on Motion of defendant Time, Inc., for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The pleadings, affidavits, depositions and the Editorial Reference File included in the affidavits disclose no genuine issue of fact upon which reasonable minds could differ. Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). Therefore, the first point of discussion is whether the First Amendment to the United States Constitution bars prosecution of this action. As a safeguard to freedom of speech and the press, the United States Supreme Court has refused to permit a public official to recover damages in a civil action for libel against a newspaper for comments about his conduct of public business absent a showing of such publication's "actual malice, that is, knowledge of falsity or reckless disregard of the truth". New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) the Court stated:

> "Erroneous statement is no less inevitable in such a case than the case of comment upon public affairs, and in both, if innocent or merely negligent,

---

1. *Life*, November 14, 1969, P. 70.

2. Spern deposition, Pp. 65–68.

'* * * it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need * * * to survive'. We create a grave risk of serious impairment of the indispensable service of a free press in a free society if we saddle the press with the impossible burden of verifying to a certainty the facts associated in news articles with a person's name, picture or portrait, particularly as related to nondefamatory matter. Even negligence would be a most elusive standard, especially when the content of the speech itself affords no warning of prospective harm to another through falsity."

The New York Times Standard has been expanded to include publications concerning public figures as well as matters of public interest. Curtis Publishing Co. v. Butts, Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); United Medical Laboratories, Inc. v. Columbia Broadcasting System, 404 F.2d 706 (9th Cir. 1968), cert. denied 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969). The First Amendment protection is to be applied in libel cases where there is found a legitimate public interest in the subject matter of the publication. Time, Inc. v. McLaney, 406 F.2d 565 (5th Cir. 1969), cert. denied 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969); Rosenbloom v. Metromedia, Inc., 415 F.2d 892 (3rd Cir. 1969), cert. granted 397 U.S. 904, 90 S.Ct. 917, 25 L.Ed.2d 85 (1970). Thus the Court in United Medical Laboratories, Inc. v. Columbia Broadcasting System, 404 F.2d 706 (9th Cir. 1968) stated:

"The crucial question here then is whether First Amendment immunity can properly be regarded as extending to disclosure and discussion of professional practices and conditions in the health area involved, so that those engaged in the particular field who may claim to have been stained by such a publication will be subject, in any seeking of redress, to application of the federal standard for defeasance of the Amendment immunity, instead of to the standards of state libel law for recovery.

"Those cases engaged in some analogy of public figures to public officials. In outer respects, such an analogy might have more closeness than one between public officials and persons engaged in the activities here involved. Thus, such persons could perhaps claim not to have offered themselves to the limelight as have public officials and public figures. But though limelight may be a factor in public interest occurring, it can hardly be held to constitute a condition for the right of public interest to exist."

The *New York Times* rule, having as its basis the principle of free discussion regarding issues concerning which the public requires information, surely applies to this case. That religious racketeering is a matter of public interest can scarcely be questioned. Thus the free flow of information on such a matter of public concern is not to be obstructed in the absence of a showing of "actual malice" by plaintiff. The requisite malice has been found only in cases in which the plaintiff proves with "convincing clarity" that the complained of article was published with actual malice or with reckless disregard of whether it was false or not. New York Times Co. v. Sullivan, supra. In St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the Court explained what the cases mean with respect to the "reckless disregard" element of the "actual malice" rule:

"These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." 390 U.S. at 731, 88 S.Ct. at 1325.

The plaintiff must bear the burden of coming forth with affirmative evidence of facts indicating the defendant's probable knowledge of the falsity. Thomson v. Evening Star Newspaper Co., 129 U.S.App.D.C. 299, 394 F.2d 774, cert. denied 393 U.S. 884, 89 S.Ct. 194, 21 L.Ed.2d 160 (1968). Mere attack on the credibility of defendant's witnesses where the testimony is uncontradicted provides no adequate basis for resisting summary judgment. Hurley v. Northwest Publications, Inc., 273 F.Supp. 967 (D.Minn.1967) aff'd on opinion below 398 F.2d 346 (8th Cir. 1968).

Furthermore, in the present case, there are no facts from which actual malice may be inferred. Washington Post Co. v. Keogh, 125 U.S.App.D.C 32, 365 F.2d 965 (1966) cert. denied 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967); New York Times Co. v. Connor, 365 F.2d 567 (C.A. 5th 1966); Hurley v. Northwest Publications, Inc., supra; Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967). The thrust of the religious racketeering article was at the activities of Rev. Keck; certainly the meager mention of Rev. Spern does not permit the inference of actual malice from the nature and circumstances of the alleged defamatory statement.

The grant of summary judgment here must be considered in the light of the Supreme Court's observation in New York Times Co. v. Sullivan, 376 U.S. at 279, 84 S.Ct. at 725, that "Would be critics * * * may be deterred from voicing their criticism, even though it is believed to be true and even though it is, in fact, true because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which 'steer far wider of the unlawful zone'."

■ In the instant case, the depositions of plaintiff and other material submitted to the court indicate he has no evidence of actual malice or reckless disregard of the truth within the meaning of these terms as defined in the above-cited case.

The case presents an appropriate situation for the granting of summary judgment to the defendant. We are mindful of the rules that summary judgments are to be sparingly granted and that doubtful cases should go to trial. We are admonished, however, that in cases falling within the rules of New York Times, supra, and its progeny, summary judgment should be entered where there is no evidence of actual malice or reckless disregard of the truth so as to avoid a chilling effect on freedom of the press. This Court finds that this defendant is entitled to summary judgment as an essential part of the rules developed to ensure the First Amendment guarantee of freedom of the press:

"In the First Amendment area, summary procedures are even more essential. For the stake here, if harassment succeeds, is free debate. One of the purposes of the *Times* principle, in addition to protecting persons from being cast in damages in libel suits by public officials, is to prevent persons from being discouraged in the full and free exercise of their First Amendment rights with respect to the conduct of their government. The threat of being put to the defense of a lawsuit brought by a popular public official may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, especially to advocates of unpopular causes. All persons who desire to exercise their right to criticize public officials are not as well equipped financially as the Post to defend against a trial on the merits. Unless persons, including newspapers, desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors. And to this extent debate on public issues and the conduct of public officials will become less uninhibited, less robust and less wide-open, for self-censorship affecting the whole public is 'hardly less virulent for being privately administered'." Washington Post Co. v. Keogh, supra.

See also Monitor Detroit Co. v. Ray, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35, and other cases decided Feb. 24, 1971.

A further reason compels the granting of summary judgment to the defendant in the case at hand: this article is not defamatory under the law of Pennsylvania. By statute in Pennsylvania [3], plaintiff bears the burden of proving all material facts of his complaint which have not been admitted by the defendant. A defamatory statement is one which tends to blacken the reputation of the defamed person, holds him up to public ridicule, hatred and contempt, or injures him in his business, trade or profession. Clark v. Allen, 415 Pa. 484, 204 A.2d 42 (1964).

It is for the court to determine whether the complained of matter is capable of a defamatory meaning. Sarkees v. Warner-West Corp., 349 Pa. 365, 37 A.2d 544 (1944); Clark v. Allen, supra. In the instant case, the plaintiff has not convinced the court of the innuendo i.e. the sense in which the article is injurious to plaintiff by putting a fair and unforced construction on it, even by reference to other facts bearing on its meaning. Under Pennsylvania law innuendo may be used to explain in what manner the article is defamatory. The innuendo, however, must be "warranted, justified and supported by the publication". Moreover, it "cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear." Sarkees v. Warner-West Corporation, supra; Sellers v. Time, Inc., 299 F.Supp. 582 (E.D. Pa. 1969), aff'd 423 F.2d 887 (C.A.3d, 1970).

Since the article is not defamatory on its face insofar as Spern is concerned, the failure of the complaint and the material submitted to aver and prove a legitimate innuendo results in the failure to state a cause of action upon which relief can be granted or to resist a motion for summary judgment. First, the names of both Keck's church and Spern's church are accurately included in the article. Any confusion between the two churches results from Keck's choice of a similar name. Secondly, the Bruns article merely refers to Spern as the man who ordained Keck; it does not say that Spern is engaged in the same activities as Keck. To say that Spern must take "dubious credit" for ordaining Keck is no more libelous than to say that the University of Pittsburgh must take dubious credit for granting a business degree to one who later turns out to be a swindler.

Not even a tortured construction of the article's language can lead to the defamatory meaning ascribed to it by the plaintiff. The foregoing discussion renders it unnecessary to consider the defenses of truth and fair comment as to which defendant under Pennsylvania law has the burden. Therefore, summary judgment must be granted defendant.

### ORDER

And now, March 17th, 1971, it is ordered that defendant's Motion for Summary Judgment be and the same hereby is granted, the complaint is dismissed and summary judgment is hereby entered for the defendant.

---

3. Act Aug. 21, 1953, P.L. 1291 (12 P.S. Sec. 1584a).