**Eugene L. RAIBLE**

v.

**NEWSWEEK, INC.**

**Civ. A. No. 70–1012.**

United States District Court,
W. D. Pennsylvania.

April 20, 1972.

---

Amelia Ann DiMeolo, for plaintiff.

Judd Poffinberger, Jr., Pittsburgh, Pa., for defendant.

## OPINION AND ORDER—MOTIONS FOR SUMMARY JUDGMENT

KNOX, District Judge.

Plaintiff alleges two causes of action against Newsweek, Inc., a national weekly publication. The first is for libel, the second is for invasion of privacy, both arising out of an article which appeared in the October 6, 1969, issue, the cover of which displays in prominent type "The Troubled American—A Special Report on the White Majority". Plaintiff also complains of publication of certain letters to the editor concerning this article in subsequent numbers and the advertising of the article in special reprint form.

The article in question begins at page 29 of the issue in question and runs for many pages thereafter with such catchy marginal headlines as "You'd better watch out, the common man is standing up"; and "We've entered paradise and it looks like the place we just left"; "Many think the blacks live by their own set of rules"; "I really worry about this country"; "For a few, revolution is the only answer". The pages are interlarded with numerous pictures of many persons whom the magazine apparently considers typical of the so-called white majority or silent majority. There are also numerous interviews giving the viewpoint of various people who appear to be regarded as being in this category with such captions as "The Square American Speaks Out". There is an

eight-page Pittsburgh portfolio showing skyscraper crews, a shift running from the Homestead Steelworks allegedly for a boilermaker on the way home, women under hair dryers, drum majorettes, Pirate fans, the pressures felt by Middle America from an unsettled society, an opinion poll entitled "The blacks—too much, too soon?"

On page 28 facing the beginning of the story is a picture of the plaintiff standing on his lawn at 1103 Walnut Street, Wilkinsburg, Allegheny County, Pennsylvania, wearing an open sport shirt and standing next to a large American flag mounted on a pole in his lawn. Numerous excerpts from the story are put together in briefs of counsel to show that the plaintiff is being depicted as the typical "Troubled American", a person considered "angry, uncultured, crude, violence prone, hostile to both rich and poor, and racially prejudiced". As a result of this it is claimed that plaintiff has been placed in a position of public hatred, contempt and ridicule, the classic words for an action of libel. It is noted that plaintiff's name does not appear on the photograph nor anywhere in the article. None of the views reported in the article are in any way ascribed to plaintiff. We can readily understand however that plaintiff's friends and neighbors in Wilkinsburg and the Pittsburgh area generally recognizing his picture might consider he was one of the persons or typical of the persons discussed in the article.

■ Discovery has been had and both the defendant and the plaintiff have moved for summary judgment. For reasons hereinafter stated, we have concluded that defendant's motion must be granted as to the first cause of action for libel, but denied as to the second cause of action for invasion of privacy and that plaintiff's motion for summary judgment must be denied as to both causes of action. Since we have two separate causes of action, it is permissible for this court to grant a partial summary judgment as to one under the decision of the Court of Appeals for this Circuit in Repass v. Vreeland, 357 F.2d 801 (3d Cir. 1966).

We start out with the assumption that plaintiff's innuendo, that is, the claimed meaning which the average person might derive from seeing the full page colored photograph of plaintiff in conjunction with the article is that alleged by the plaintiff. The difficulty is that assuming all this is true, it still does not in the view of the court add up to a cause of action for libel under Pennsylvania law which applies in this case. Plaintiff resides in the Western District of Pennsylvania. The magazine was circulated here and it was here the damage, if any, to plaintiff was done.

■ Pennsylvania has a statute respecting libel actions (Act 1953 August 21 P.L. 1291, 12 Purdon's Pa. Statutes § 1584a.[1] We hold that the article viewed in its entirety is not susceptible of a defamatory meaning which is actionable under Pennsylvania law. Pennsylvania rules that the question of whether an article is capable of defamatory meaning is a question of law for the court. Cor-

---

1. "§ 1584a. Burden of Proof
(1) In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
(a) The defamatory character of the communication;
(b) Its publication by the defendant;
(c) Its application to the plaintiff;
(d) The recipient's understanding of its defamatory meaning;
(e) The recipient's understanding of it as intended to be applied to the plaintiff;
(f) Special harm resulting to the plaintiff from its publication;

(g) Abuse of a conditionally privileged occasion.
(2) In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:
(a) The truth of the defamatory communication;
(b) The privileged character of the occasion on which it was published;
(c) The character of the subject matter of defamatory comment as of public concern. 1953, Aug. 21, P.L. 1291, § 1."

abi v. Curtis Publishing Co., 441 Pa. 432, 273 A.2d 899 (1971); Sellers v. Time, Inc., 423 F.2d 887, (3d Cir. 1970); Sarkees v. Warner-West Corp., 349 Pa. 365, 37 A.2d 544 (1944); Scott-Taylor, Inc. v. Stokes, 425 Pa. 426, 229 A.2d 733 (1967).

 It is undoubtedly true in Pennsylvania that the fact defendant is engaged in the publishing business gives it no privilege for character assassination. Purcell v. Westinghouse Broadcasting Co., 411 Pa. 167, 191 A.2d 662 (1963). It is also true that you cannot defame a group of several hundred people. While plaintiff need not be specifically named or singled out, nevertheless the matter must clearly refer to a specific person. Schonek v. WJAC, Inc., 436 Pa. 78, 258 A.2d 504 (1969). Since the article indicates that the views expressed are those of the white majority in the United States of whom plaintiff is one, then we would have to conclude that the article, if libelous, libels more than half of the people in the United States and not plaintiff in particular.

 The sum total of the words which plaintiff has concluded are descriptive of the persons considered in the article is "bigot". We hold that to call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic or sociological philosophies gives no rise to an action for libel.

The basic case is McAndrew v. Scranton Republican Publishing Co., 364 Pa. 504, 72 A.2d 780 (1950) where it was held that an article claiming that a Republican candidate for office was carrying the flag and running on his war record and that a Democratic candidate had said "We all have to have a little Communism" is not libelous. The court relied heavily on a prior decision of the Court of Appeals for this Circuit in Sweeney v. Philadelphia Record Co., 126 F.2d 53 (3d Cir. 1942) and a similar action brought by Congressman Sweeney in Ohio, Sweeney v. Beacon Journal Pub. Co., 66 Ohio App. 475, 35 N.E.2d 471

(1941). The McAndrews case held that not every annoying and embarrassing publication is a libel. The court said:

"This report might be very annoying and embarrassing to B but he would not be defamed by it. *Not every lie is a libel. A might falsely report that B had said that C was seeking votes because of his race or had said that D, who happened to be a fine tenor singer, was trying to 'sing his way' into public office.* While such reports might be very annoying and embarrassing to B, they would not justify an action for libel against A. Many men in public life and in private life have been greatly annoyed by being misquoted. But annoyance does not constitute defamation."

The court went on to say with respect to the Sweeney cases:

"It would doubtless be very annoying for a man to be charged with bigotry of any kind, yet it has been held that for a man to be charged with such bigotry is not defamation. In Sweeney v. Beacon Journal Pub. Co., 66 Ohio App. 475, 35 N.E.2d 471, a member of the United States Congress brought an action of libel against a newspaper which published a daily syndicated column stating that the congressman was opposing the appointment of a certain individual to a federal judgeship, because that individual was a foreign-born Jew. In overruling plaintiff's appeal from judgment against him on a question of law, the appellate court said: 'Does the article reflect upon his character in such a manner as to bring him into ridicule, hatred or contempt?' This question was answered in the negative. And in Sweeney v. Philadelphia Record Company, 3 Cir., 126 F.2d 53, where there was a similar action based on the same syndicated article, the Circuit Court of Appeals held that the publication 'at the most charged [the congressman] with being a bigoted person' who was actuated by a prejudice of an unpleasant and undesirable kind but it was not libelous

per se and the action could not be sustained."

In the Sweeney case in the Third Circuit, supra, the court said

"At the most the appellant is charged with being a bigoted person who, actuated by a prejudice of an unpleasant and undesirable kind, opposed a foreign-born Jew for a judicial appointment. Let us assume that it was stated in the alleged libel that the plaintiff opposed the appointment of a candidate simply because he was an Eskimo born above the Arctic Circle. We think that this example makes obvious the absurdity of the plaintiff's position. Eskimos are not being persecuted. Jews are being widely persecuted. We think that it is the connotation of persecution, which when carried into the matter published concerning the plaintiff, gives it the fallacious aspect of being libelous per se. The libel does not allege that Congressman Sweeney persecutes foreign-born Jews. It states nothing more than that he opposes one for an important federal office on the grounds stated."

It is true that the McAndrew case with respect to the charge of communism was modified by Solosko v. Paxton, 383 Pa. 419, 119 A.2d 230 (1956). After congress had passed an Act making membership in the communist party or other organization formed to overthrow the government by force a crime the court held that by that time it was libelous to call a person a communist but the basic philosophy of the McAndrew case and its adoption of the reasoning of our court of appeals in Sweeney, supra, remains unchanged and has been followed in other cases.

Thus in Scott-Taylor, Inc. v. Stokes, supra, where a chairman of the board of supervisers at a public hearing on a proposed apartment house project remarked that plaintiff's buildings looked "like chicken coops" the court said "there must be more than an abrasion of sentiment before the law requires that the courts tender therapeutic treatment and surgical attention." The court further said:

"Clarity in the communication of ideas is improved and very frequently enlivened by the use of appropriate synonyms and metaphors. Thus, the plaintiffs are not to be offended if their lawsuit is referred to as a tempest in a teapot, a hurricane in a fish bowl, or a Pickett's Charge in a chicken coop."

More recently this same view is repeated by our Court of Appeals in Sellers v. Time, Inc., supra. In this case, plaintiff while playing golf had blinded one of his partners in the left eye when a badly played shot flew to the rear. The court affirmed a judgment for the defendant on the grounds that the article run in a national magazine entitled "Duffers Dilemma" was not defamatory. Plaintiff complained that it degraded his character because it indicated that he played golf only for business reasons and that his mind was on his business rather than golf when he hit the shot in question. Plaintiff complained that the statement indicated that he was a "crass, materialistic, wheeler-dealer businessman who cannot forget business for even a few hours on the golf course."

The court said:

"Moreover, as the district judge properly noted, business golf is neither shocking nor shameful to the average reader of TIME. Indeed, it is a commonplace practice among professional men and politicians, as well as businessmen. For these reasons, we conclude that a Pennsylvania court would reject these innuendos according to the teaching of Sarkees v. Warner-West."

and concluded with the statement:

"While the article may have caused Sellers great personal annoyance, annoyance alone does not constitute defamation. Scott-Taylor, Inc. v. Stokes, 425 Pa. 426, 229 A.2d 733 (1967)."

Americans have been hurling epithets at each other for generations. From charging "Copperhead" during the Civil

War, we have come down to "Racist", "Pig", "Fascist", "Red", "Pinko", "Nigger Lover", "Uncle Tom" and such. Certainly such name calling, either expressed or implied, does not always give rise to an action for libel.

■■ While unnecessary to our decision on the libel question, we will say we do not agree with defendant's argument that the article must be "libelous per se" or special damage must be alleged in order to give rise to a cause of action under Pennsylvania law. Libelous per se is usually thought of as language imputing commission of a crime, possession of a loathsome disease, insanity, infidelity and unfitness in one's business or profession. However, the Restatement of Torts, Section 569 is clear in its language,

> "One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication a libel is liable to the other *although no special harm or loss of reputation results therefrom.*"

and the Pennsylvania Annotations to this section say that there appears to be misconception in Pennsylvania law as a result of misleading headnotes in certain cases and in certain court cases. Drebin v. Jewish Publishing Co., 262 Pa. 169, 105 A. 58 (1918) is cited as correctly stating the Pennsylvania law. The Pennsylvania Statute, supra, merely indicates that the burden is on plaintiff to prove special harm where that is in issue. See also Cann v. Sando, 48 Luz. Leg.Reg. 82 (1958).

■ Plaintiff's action for invasion of his right of privacy stands on firmer ground. The right of privacy is recognized in Pennsylvania. See Jenkins v. Dell Pub. Co., 251 F.2d 447 (3d cir. 1958) affirming the decision of this court per, now Chief, Judge Marsh at 143 F.Supp. 952. See also Prosser on Torts Third Edition page 104; Restatement of Torts Sections 49 and 867;

Forster v. Manchester, 410 Pa. 192, 189 A.2d 147 (1963); Aquino v. Bulletin Co., 190 Pa.Super. 528, 154 A.2d 422 (1959). Defendant at argument stated that no reliance was being placed either in libel or in privacy upon New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny including Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed. 296 (1971) holding that actions for libel will not lie at the suit of a public official or by other persons involved in a matter of public interest absent a showing of the publication's "actual malice that is knowledge of falsity and/or reckless regard of the truth". See also Time v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) and the decision of this court in Spern v. Time, Inc., 324 F.Supp. 1201 (W.D.Pa.1971). It would seem apparent from the depositions in this case that while the subject of the article, to wit: the public concern of troubled Americans is obviously a matter of public interest, nevertheless there is nothing to show that plaintiff was ever involved either wilfully or unintentionally in these matters. Plaintiff contends that a photographer for the defendant merely asked to take the picture of himself and his children in his yard for use in "a patriotic article". Plaintiff contends that he never gave his consent to having his children cut out of the picture nor to its use in connection with the article in question.

■ It is true that if plaintiff consented to the use of his photograph in connection with *this article*, he would have waived his right of action for invasion of privacy. However, it would appear to the court that the burden of proof is upon the defendant to show just what plaintiff consented to and the varying inferences from this testimony will have to be resolved by the trier of facts.

Since plaintiff's motion for summary judgment rests upon oral testimony, it will have to be denied. As stated, the

cause of action based upon libel is without basis and defendant's motion for summary judgment as to this will be granted. Defendant's motion for summary judgment on the cause of action for invasion of privacy will be denied and the case will go to trial.