Carol **VITALE**

v.

The **NATIONAL LAMPOON, INC.**

**Civ. A. No. 76–246.**

United States District Court,
E. D. Pennsylvania.

April 20, 1978.

As Amended April 24, 1978.

David Azrak, Philadelphia, Pa., for plaintiff.

Mark A. Aronchick, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

FOGEL, District Judge.

This diversity action comes before us after removal from the Court of Common Pleas of Philadelphia County, Pennsylvania. Plaintiff is a citizen of Florida and, according to the original complaint, "a well known singer in the Philadelphia area." Defendant, which publishes a satirical humor magazine that is distributed nationally, is a citizen of New York since it is incorporated under the laws of that state, and has its principal place of business in New York City.

Plaintiff contends that a previously published photograph of her was used by the defendant in a libelous manner, and that such unauthorized use has resulted in damage to her reputation. Defendant, after removing the matter to this Court, has moved for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure. Also before us is plaintiff's motion to permit the filing of an untimely jury demand.[1]

We will grant summary judgment in favor of defendant; hence, the jury trial issue is moot.

### I

Plaintiff's allegation of libel stems from the use of her photograph in one issue of defendant's magazine in which defendant had published a parody of *Playboy* magazine,[2] an internationally-known magazine catering to men. Plaintiff had appeared as one of the monthly "playmates" in that magazine, a regular interviewing feature article that is accompanied by nude and semi-nude photographs of the fortunate woman who is the focus of the magazine's attention that month. This feature is prominently placed at the center of the magazine and includes a larger fold-out photograph or "centerfold" which is a highlight of the publication.

Included in defendant's parody was a mock advertisement, that followed the format used by *Playboy* magazine when it advertises itself to prospective purchasers; it normally depicts the *Playboy* reader as a well-to-do gentleman accompanied by two or more beautiful women.[3] Defendant's parody advertisement depicted a reader who for obvious reasons would not be considered to be one of the "beautiful people" who comprise the "jet set." To spare ourselves the literary voyage OUT which would be required to describe the picture, we have appended a copy to this opinion so the reader may share the euphoria of this unique aesthetic experience without the unwelcome intervention of an interpreter.[4]

---

1. Rule 39(b) of the Federal Rules of Civil Procedure provides:

   [N]otwithstanding the failure of a party to demand a jury . . . the court in its discretion upon motion may order a trial by a jury of any or all issues.

2. The complained-of publication, National Lampoon's "Gentleman's Bathroom Companion", was published on or about September, 1975,

and contained material from prior monthly magazines. Actually, the article in question originally appeared in the October, 1974, monthly issue of defendant-magazine.

3. See Appendix A, *infra*.

4. See Appendix B, *infra*.

Plaintiff contends that this use of her photograph, together with the accompanying comment, was defamatory and libelous in that it depicted her as a tramp and a lady of perverted morals. Plaintiff further alleges in her complaint that defendant libelously published her photograph with reckless disregard for the truth and with malice.

## II

The first alternative ground for summary judgment urged by defendant would have us find that the publication was not capable of any defamatory meaning as to plaintiff. Defendant asserts that not only was the reproduction of plaintiff's photograph unidentifiable as plaintiff,[5] but that the theme of the parody made no statement about plaintiff herself. Rather, defendant insists the parody was intended to make a statement about the readership of *Playboy* magazine in general.

Whatever the merits of these arguments, it is clear that they involve factual determinations, both as to whether plaintiff is sufficiently distinguishable and also as to what statement, if any, the parody makes about her. Here, however, we are ruling on a summary judgment motion, and Rule 56(c) provides that summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant has the burden of proof, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and the evidence presented must be construed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The facts asserted (for purposes of ruling on this motion), if supported by affidavits or other evidentiary material, must be regarded as true. *First National Bank of Cincin-* *nati v. Pepper*, 454 F.2d 626 (2d Cir. 1972); *Janek v. Celebrezze*, 336 F.2d 828 (3d Cir. 1964).

Plaintiff has filed the affidavit of the manager of a Philadelphia restaurant which employed her as a singer at the time the photograph was published. This affidavit states that defendant's publication adversely reflected on plaintiff's reputation as a lady and as a performing artist. If this evidence is to be construed in a light most favorable to plaintiff, we simply cannot hold as a matter of law that the publication could not be construed to be defamatory as to plaintiff. Summary judgment, therefore, could not be granted on this ground.

## III

Defendant's alternative argument is that plaintiff is a public figure, and because of her status, recovery would violate defendant's constitutional rights under the First and Fourteenth Amendments to the Constitution. This argument finds its genesis in the Supreme Court decision of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny. In that case, the Court held that the First Amendment guaranties of freedom of speech and press prohibited a public official from recovering damages for a libelous statement relating to his official conduct in an action brought under state law unless it were shown that the statement was made with actual malice, that is, actual knowledge of the falsity of the statement or wanton disregard for its probable falsity. Later, in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Court extended this requirement beyond public officials to public figures generally, and defined a public figure as someone who commanded a substantial amount of public interest either by virtue of his or her position alone, or by having thrust himself or herself into the vortex of an important public controversy.

5. There is no dispute, however, that the centerfold photograph used in the parody was in fact that of plaintiff.

Justice Brennan's plurality opinion in *Rosenbloom v. Metromedia*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), focused on the public nature of the controversy involved in denying a private plaintiff recovery. However, this view was later rejected by the full Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), which held that the requirement of actual malice did not apply to private individuals even if they were libeled in the reporting of a public issue or concern. In that case the Court defined public figures as:

> [Persons who] have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, *they invite attention and comment.* (Emphasis added.) [6]

Plaintiff strenuously objects to her classification as a public figure; however, we feel that a qualified classification as such is appropriate under the facts admitted here. Plaintiff voluntarily posed for the nude and semi-nude photographs published by *Playboy* magazine on this and other occasions, and both consented to and received payment for their publication. She obviously sought international circulation of her photographs and her expectations were fulfilled.

In this regard, her position is clearly distinguishable from the situation presented in *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), upon which she relies. The Court in that case ruled that Mrs. Firestone, although quite well known, was not a public figure for all pur-

poses. Moreover, it was held that *she was not a public figure for the limited purposes of her divorce, for which she was forced to involuntarily make public certain private facts by the judicial process itself, since it was only in that way that a decree of divorce could be obtained.* The Court reasoned that under the singular facts of that case, plaintiff was coerced into the use of the legal process and *had not voluntarily chosen to make her divorce a matter of public interest.*

In reaching our decision, we are guided by the holding in *Time, Inc. v. Johnston*, 448 F.2d 378 (4th Cir. 1971). In that case *Sports Illustrated* published an article wherein it was stated that Bill Russell had "destroyed" Neil Johnston, a former basketball player, both as an athlete and in a psychological sense. In holding that Johnston was a public figure insofar as basketball fans were concerned the court stated:

> He had offered his services to the public as a paid performer and had thereby invited comments on his performance as such. In a sense, he assumed the risk of publicity, good or bad, so far as it concerned his public performance.[7]

■ Plaintiff's photographs appeared in *Playboy* magazine on at least four occasions between 1972 and 1975. When defendant appeared as the July, 1974, centerfold feature, no fewer than fifteen photographs of defendant were published. Moreover, plaintiff was also extensively interviewed in an accompanying article which appeared in that edition. Thus, plaintiff *voluntarily* placed herself in the public domain in the role of a *Playboy* model, "invit[ing] attention and comment." *Gertz, supra.* Therefore, *we rule that with respect to her role in Playboy magazine, and for that limited purpose only,*[8] *plaintiff is a public figure to the readership of that magazine.*

---

**6.** 418 U.S. at 345, 94 S.Ct. at 3009.

**7.** 448 F.2d at 380.

**8.** This is not to say, however, that *plaintiff would have to meet the burden of showing actual knowledge of the falsity of the statement*

or wanton disregard for its probable falsity under all factual configurations. If, for example, defendant had stated that plaintiff was a Communist, the normal standards for recovery would apply, since *plaintiff is not a public figure for purposes of her political affiliations.*

## IV

Classification of a plaintiff as a public figure does not preclude that plaintiff from recovery for an alleged libel, but such a plaintiff must meet the more strenuous burden of proving actual malice. As previously noted, this requires showing either that defendant had actual knowledge that a defamatory statement was false or that it was made with reckless disregard of whether it was false or not. Unlike a "reasonable" standard, this standard requires a high degree of awareness of the probable falsity of the statement, *Washington Post v. Keogh*, 125 U.S.App.D.C. 32, 365 F.2d 965 (1966), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967), or a reckless disregard equivalent to calculated falsehood, *Pauling v. National Review*, 49 Misc.2d 975, 269 N.Y.S.2d 11 (1966). Such actual malice is not presumed, but must be proven by a plaintiff. *Henry v. Collins*, 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d 892 (1965); *New York v. Connor*, 365 F.2d 567 (5th Cir. 1966).

Beyond the assertion of malice in the complaint, plaintiff has failed to produce any evidence which would support a finding of malice on the part of defendant. Indeed, the results of the pretrial discovery clearly establish that malice was not involved in defendant's random choice of plaintiff's photograph, which first appeared in defendant's monthly magazine in October, 1974, within three months of its publication in *Playboy*. It would appear that the issue of *Playboy* containing plaintiff's centerfold photograph was on the newsstands for sale at the time defendant's article was conceived and prepared, and her appearance in defendant's publication was by mere chance. Further, defendant's contention that it intended to make no statement about plaintiff, but rather about the *Playboy* magazine's readership in general, is unrebutted and appears fully consistent with a reading of the offending article.

Since plaintiff has not produced any evidence which would support a finding of malice there is no issue of material fact, and summary judgment is appropriate. *Washington Post v. Keogh, supra; Martin Marietta Corp. v. The Evening Star Newspaper Company*, 417 F.Supp. 947 (D.C.1976); *Rev. A. C. Spern v. Time, Inc.*, 324 F.Supp. 1201 (W.D.Pa.1972).

Accordingly, an Order will be entered granting defendant's motion for summary judgment.

Appendices to follow.

APPENDIX A

# WHAT SORT OF MAN READS PLAYBOY?

He's a man who demands the best that life has to offer. When he takes to the slopes, he prides himself on having the newest and best gear going. And his buying guide is PLAYBOY. Fact: PLAYBOY is read by 42% of all men who spent $100 or more on ski equipment last year. If you are an advertiser of a leisure product or service, this is clearly the market that can put you a jump ahead of your competition. And keep you there, season after season. (Source: *1973 Simmons.*)

New York • Chicago • Detroit • Los Angeles • San Francisco • Atlanta • London • Tokyo

Appendix B to follow.

APPENDIX B

# WHAT SORT OF MAN READS PL*YB*Y?

A young man in touch with himself and his own imagination. Self-reliant, and with an appreciation for his personal privacy, he keeps his hand close to his chest and an eye out for unexpected interruptions of his daily routines. With confidence in his ability to handle himself in tense situations, the PL*YB*Y reader wrings every last drop of satisfaction from his private pursuits. Helping him stand up to that challenge is his favorite magazine. Fact: PL*YB*Y is read by nearly half of all young men who eventually excell at tennis, handball, or arm wrestling, and spent at least $12 on fine spurting goods last year alone. To reach that young man, put yourself in PL*YB*Y. He does. (Source: 1973 TGIF.)

New York • Chicago • Detroit • Los Angeles • San Francisco • Midville • Atlanta • London • Tokyo